In re DARTMOOR HOMES,
INC., Debtor.

Bankruptcy No. 94 B 00963.

United States Bankruptcy Court,
N.D.Illinois,
Eastern Division.

Oct. 26, 1994.

Melanie Rovner Cohen, Faye B. Feinstein, Altheimer & Gray, Chicago, IL, for Ziebell Water Service.

Steven B. Towbin, David Newberry, D'Ancona & Pflaum, Chicago, IL, for Committee.

Sheldon Solow, Sachnoff & Weaver, Chicago, IL, for debtor.

**MEMORANDUM, OPINION
AND ORDER**

ROBERT E. GINSBERG, Bankruptcy Judge.

This matter is before the Court on a Motion for Reconsideration brought by Ziebell Water Service Products, Inc.[1] In this motion, Ziebell requests the Court to reconsider its order denying Ziebell's motion for Leave to File Proof of Claim Instanter filed several weeks after the date set by the Court by which claims had to be filed. *See* 11 U.S.C. § 1111(a); Fed.R.Bankr.P. 3003. The Official Committee of Unsecured Creditors opposes Ziebell's present motion. The Court has conducted an evidentiary hearing. As a result of the evidence adduced at that hearing, this Court finds itself required to answer the following question: when a debtor and a creditor both fail to defend their interests zealously and both neglect their obligations under relevant bankruptcy law, which party must bear the ultimate responsibility? For the reasons stated below, the Court finds that in this circumstance, the Debtor is primarily responsible for Ziebell's failure to file its proof of claim prior to the bar date. Therefore, the Court grants Ziebell's Motion for Reconsideration, and the Court will order Ziebell's proof of claim to be deemed to be timely filed.

### FACTS

The essential facts are not in dispute. On September 9, 1993, Ziebell filed a complaint against Dartmoor Homes, Inc. ("Dartmoor", "the Debtor") in the Circuit Court of Cook County, Chancery Division, *Ziebell Water Service Products, Inc. v. Dartmoor Homes, Inc.,* Case No. 93 CH 08057. This complaint sought recovery from Dartmoor on a theory of promissory estoppel, claiming damages of $200,255.53.[2] Dartmoor was served with Zie-

---

**1.** While Ziebell has captioned its motion as "For Reconsideration Pursuant to Fed.R.Bankr.P. 9023," this Court considers this motion to be brought under Rule 3008. Rule 9023, "New Trials; Amendment of Judgments," states that "Rule 59 Fed.R.Civ.P. applies in cases under the Code, except as provided in Rule 3008." Rule 3008, "Reconsideration of Claims" provides that "a party in interest may move for reconsideration of an order allowing or disallowing a claim against the estate. The court after a hearing on notice shall enter an appropriate order." Because Ziebell is seeking the relief provided by Rule 3008, the Court deems Ziebell's motion to be brought pursuant to Rule 3008 and 11 U.S.C. § 502(j).

**2.** Ziebell's state court complaint alleges that Dartmoor is liable to Ziebell for the cost of products delivered to and incorporated into one of Dartmoor's housing developments.

bell's complaint on September 23, 1993. The Circuit Court of Cook County entered a default judgment on November 5, 1993. Dartmoor did not seek to have the judgment vacated.

Dartmoor filed a voluntary petition for relief under Chapter 11 on January 18, 1994. Ziebell was not listed as a creditor in Dartmoor's schedules of creditors, a circumstance which attorneys for Dartmoor have described as an "oversight." [3] However, Ziebell is listed on Attachment VII to Dartmoor's schedules which lists "Suits, Executions, Garnishments and Attachments." [4]

The United States Trustee appointed the Official Committee of Unsecured Creditors ("Creditors' Committee") on February 3, 1994. The Creditors' Committee filed a motion on February 17, 1994 seeking an order fixing a bar date for creditors to file proofs of claim. See Fed.R.Bankr.P. 3003(c)(3). The Court originally set April 15, 1994 as the bar date. That date was subsequently extended by the Court to May 31, 1994. [5]

Since Ziebell was not scheduled as a creditor in Dartmoor's schedules, it was given no notice of the proceedings leading to the fixing of a bar date. Ziebell only was apprised of Dartmoor's bankruptcy after Edward Freud, an attorney for Ziebell, heard a report on the radio about the bankruptcy in mid-February of 1994. Freud immediately informed Ziebell about the bankruptcy. Ziebell instructed Freud to file a proof of claim. Freud ordered his associate, John Plattner, to investigate the details of Dartmoor's bankruptcy and to file the proof of claim. Plattner contacted a representative of one of Dartmoor's housing developments, who gave him the phone number of Matthew Gens-

burg, one of Dartmoor's bankruptcy attorneys. Plattner called Gensburg and told him about Ziebell's pre-petition default judgment against Dartmoor. Plattner made copies of Dartmoor's bankruptcy file on February 22 and February 25, 1994 and reviewed the file on March 1, 1994. In spite of the fact that Freud and Plattner knew that Ziebell was not scheduled as a creditor, neither Freud nor Plattner checked the court file or docket at any time after March 1, 1994. In addition, neither Freud nor Plattner ever filed a proof of claim, nor did they seek to compel Dartmoor to amend its schedules, nor did they seek any other relief on behalf of their client.

In fact, Ziebell and its counsel took no further action whatsoever to protect Ziebell's claim against Dartmoor until June 15, 1994, when Plattner contacted Ira Bodenstein, an attorney for the Creditors' Committee, to determine the status of the case. [6] Bodenstein informed Plattner that the time for filing claims in the Chapter 11 case had expired on May 31, 1994, the claims bar date set by the Court.

Plattner filed a motion for Leave to File Proof of Claim Instanter on June 16, 1994. The motion alleged that Ziebell had received none of the notices sent to creditors in the Chapter 11 case, and that Ziebell first learned of the May 31, 1994 bar date on June 15, 1994. The motion did not disclose Ziebell's knowledge of the pendency of Dartmoor's Chapter 11 case, dating back to February, 1994.

The Court heard and denied Ziebell's motion on June 24, 1994. The Court based its decision upon the fact that Ziebell's attorneys had actual knowledge of Dartmoor's bank-

---

3. At the hearing, one of Dartmoor's attorneys. Matthew Gensburg, testified that the failure to list Ziebell as a creditor was "an oversight" on the part of Dartmoor's attorneys. Dartmoor recently amended its schedules, albeit after the bar date had passed, to reflect Ziebell's claim.

4. Attachment VII responds to question 4a of the Official Statement of Financial Affairs in the schedules.

5. The Court extended the bar date after Dartmoor failed to give twenty days notice of the bar date to its known creditors as required by Fed. R.Bankr.P. 2002(a)(8).

6. Plattner testified that he believed that the bar date would be the date the plan was due in Chapter 11 cases. He claimed to have relied on the Court's sua sponte order setting the date for the Debtor to file a plan at July 18, 1994. On cross examination, counsel for the Creditors' Committee impeached Plattner's testimony with Plattner's deposition, in which Plattner's only stated excuse for his failure file a claim in time was that he "didn't get to it." Nowhere in his deposition did Plattner say he relied on the order fixing a date for the Debtor to file a plan in his delay in filing a proof of claim.

ruptcy for several months, and therefore had ample opportunity to protect Ziebell's interests by filing a timely proof of claim. Transcript June 24, 1994, p. 10. The Court was also disturbed that Ziebell's motion failed to disclose that Ziebell had been aware of Dartmoor's bankruptcy case for several months before the bar date. Transcript, June 24, 1994, p. 12.

On July 5, 1994, Ziebell moved for reconsideration of the Court's denial of Ziebell's motion for leave to file a proof of claim instanter. The Creditors' Committee opposed Ziebell's motion to reconsider.[7] The Court held an evidentiary hearing on September 29, 1994.

## *JURISDICTION*

This Court has jurisdiction over this matter under 28 U.S.C. § 1334(b) as a matter arising under §§ 501 and 502 of the Bankruptcy Code. This matter is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A)(B), and (O) and is before the Court pursuant to Local Rule 2.33 of the United States District Court for the Northern District of Illinois referring bankruptcy cases and proceedings to this Court for hearing and determination. Venue is proper pursuant to 28 U.S.C. § 1409(a).

## *DISCUSSION*

I. *Standard For Motion For Reconsideration.*

The Court has broad discretion to redetermine the status of a claim at the request of a party in interest at any time "for cause".

**7.** Curiously, the Debtor has neither supported nor opposed the motion.

**8.** 11 U.S.C. § 502(j) reads, in pertinent part, as follows: "A claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case." Fed. R.Bankr.P. 3008 implements 11 U.S.C. § 502(j) and states "[a] party in interest may move for reconsideration of an order allowing or disallowing a claim against the estate. The court after a hearing on notice shall enter an appropriate order."

**9.** Rule 9023, "New Trials; Amendment of Judgments," states that "Rule 59 Fed.R.Civ.P. applies in cases under the Code, except as provided in Rule 3008."

*See* 11 U.S.C. § 502(j); Fed.R.Bankr.P. 3008. Clearly, Ziebell is a party in interest, *see* 11 U.S.C. § 1109, and has standing to move for reconsideration on a claim.[8] Neither the Bankruptcy Code nor the Federal Rules of Bankruptcy Procedure define what constitutes "cause" for these purposes.

■ Fed.R.Bankr.P. 9023 and 9024 import Fed.R.Civ.P. 59 and 60, respectively, into the bankruptcy process with some modification.[9] Where a party brings a motion for reconsideration within ten days of the entry of the Court's order allowing or disallowing the claim, the reconsideration process is governed by Fed.R.Civ.P. 59 as modified by Fed.R.Bankr.P. 3008.[10] *Charles v. Daley,* 799 F.2d 343 (7th Cir.1986). Therefore, the Court can grant Ziebell's motion if the movant shows there was a mistake of law or fact or presents newly discovered evidence that could not have been discovered previously. *Deutsch v. Burlington Northern Railroad Co.,* 983 F.2d 741 (7th Cir.1992) *cert. denied,* —— U.S. ——, 113 S.Ct. 1845, 123 L.Ed.2d 470 (1993).

In its initial ruling, the Court would not deem Ziebell's late claim to be timely filed after the Court was informed that Ziebell discovered that Dartmoor filed a bankruptcy petition shortly after the inception of the case, yet had taken no steps to protect its rights in the bankruptcy case and had failed to disclose its knowledge of the bankruptcy in its motion. No evidence was presented by the parties. The Court ruled on the motion summarily from the bench.

Rule 9024, "Relief From Judgment or Order," states that "Rule 60 Fed.R.Civ.P. applies in cases under the Code except that (1) a motion to reopen a case under the Code or for the reconsideration of an order allowing or disallowing a claim against the estate entered without a contest is not subject to the one year limitation prescribed in Rule 60(b)."

**10.** Under Fed.R.Bankr.P. 9006(a) which governs extensions of time, if the time deadline for a filing coincides with a federal holiday, the period runs until the end of the next day. The tenth day after the order denying Ziebell's motion was Independence Day, and therefore by filing its claim on July 5, Ziebell filed its claim in time to be considered under Fed.R.Civ.P. 59.

After carefully reviewing the transcript of the initial hearing, the Court has concluded that it did not consider all relevant issues of fact and law in ruling on the motion.[11] Most significantly, the Court did not consider Dartmoor's failure to notify a known creditor of the bar date and the potential impact of this fact on the status of the motion.

## II. Ziebell Was Required To File a Proof of Claim By The May 31, 1994 Bar Date.

■ A creditor in a chapter 11 case is not necessarily required to file a proof of claim. If a claim is scheduled as undisputed, liquidated, and noncontingent, the creditor either can accept the amount scheduled as the amount of its claim or may file a claim asserting another amount. 11 U.S.C. §§ 501, 1111(a); Fed.R.Bankr.P. 3003. However, if a debtor's schedules list a claim as contingent, disputed, or unliquidated, or if the claim is omitted from the schedules altogether, the creditor must file a timely proof of claim to be treated as a creditor for purposes of voting and distribution. 11 U.S.C. § 1111(a); Fed.R.Bankr.P. 3003(c)(2).[12] If a scheduled creditor does not file a timely proof of claim when it is required to do so, that creditor is in the worst of all worlds: it cannot participate in plan voting, will receive no distributions under the plan, and will have its claim discharged, should the debtor receive a discharge. Fed.R.Bankr.P. 3003(c)(2). Unlike in a Chapter 7 case, a creditor that fails to file a required proof of claim in a Chapter 11 case does not even get a subordinated claim against the debtor. Compare 11 U.S.C. § 726; Fed.R.Bankr.P. 3003(c)(2). Instead, in effect the late claim simply no longer exists for purposes of the Chapter 11 case.

In theory, the same rule applies to unscheduled creditors. Ziebell was not listed on Dartmoor's schedule of creditors and, therefore, was required to file a proof of claim in order to participate in the plan process and to receive distributions under the plan. This creates a problem, since the rule does not address how a creditor who is neither scheduled nor notified of the bankruptcy could be expected to know that it must file a proof of claim. See generally City of New York v. New York, N.H. & H.R. Co., 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1952).

A creditor in a Chapter 11 case who is required to file a proof of claim or wishes to challenge the scheduled amount or priority does not have an unlimited time to file a proof of claim. In a Chapter 11 case, the Court sets a bar date for all permissive and required claim filings. Fed.R.Bankr.P. 3003(c). This "enable[s] the debtor and its creditors to know, reasonably promptly, what parties are making claims and in what general amounts;" Matter of Stavriotis, 977 F.2d 1202, 1205 (7th Cir.1992); In re Pettibone Corp., 156 B.R. 220 (Bankr.N.D.Ill.1993), aff'd, 163 B.R. 989 (1994).

■ The Court can extend the date "for cause." Fed.R.Bankr.P. 3003(c)(3).[13] Fed.R.Bankr.P. 9006(b)(1) provides guidance for time extensions generally:

the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done

---

11. The court made the following ruling on Ziebell's motion: "based on the case law of Pioneer and its progeny and the cases preceding Pioneer are overwhelmingly clear. You had plenty of time to act to protect your interests. You didn't do it. You suffer the consequences. The motion is denied." Transcript, June 24, 1994, p. 10, citing Pioneer Investment Services Co. v. Brunswick Assoc., —— U.S. ——, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993).

12. Rule 3003(c)(2) states that "[a]ny creditor or equity security holder whose claim or interest is not scheduled or scheduled as disputed, contin-

gent, or unliquidated shall file a proof of claim or interest within the time prescribed by subdivision (c)(3) of this rule; any creditor who fails to do so shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution."

13. Rule 3003(c)(3) states that "[t]he court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed. Notwithstanding the expiration of such time, a proof of claim may be filed to the extent and under the conditions stated in Rule 3002(c)(2), (c)(3), and (c)(4)."

**where the failure to act was the result of excusable neglect.**

Fed.R.Bankr.P. 9006(b)(1) (emphasis added). Thus, the Court has authority to accept an untimely proof of claim and treat it as if it were timely filed if the party's failure to file promptly was the result of "excusable neglect."

■ Because Ziebell is the party seeking relief from the time bar, Ziebell has the burden of proving excusable neglect by a fair preponderance of the evidence. *In the Matter of Bulic*, 997 F.2d 299, 302 (7th Cir.1993); *In re Specialty Equipment Companies, Inc.*, 159 B.R. 236, 239 (Bankr.N.D.Ill.1993).

III. *Was Ziebell's Failure To File Before May 31, 1994 The Result Of Excusable Neglect?*

■ In a recent decision, the United States Supreme Court took a broad view of "excusable neglect," and has instructed this Court to take into account "equitable circumstances" in determining whether a party's constitute excusable neglect. *Pioneer Investment Services Co. v. Brunswick Assoc.*, — U.S. —, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). Accordingly, a court can find excusable neglect not only in situations beyond the party's control, but also in situations when the party's actions or failure to act was the result of carelessness or mistake. *Id.; see also In the Matter of Bulic*, 997 F.2d 299 (7th Cir.1993).

In *Pioneer*, the notice of the bar date for filing claims was buried at the end of a general notice to creditors dealing with a variety of matters. A creditor's attorney overlooked the bar date notice when reading the general notice and consequently filed the creditor's claim several weeks late. The Supreme Court thought the bar date notice was unusual and inconspicuous, and found that the trial court acted within its discretion when it held that the attorney's failure to observe the bar date and to file a timely claim was the result of excusable neglect. *Id.*

■ The Supreme Court's analysis of the meaning of the phrase "excusable neglect,"

requires this Court to make two findings in order to conclude that the actions of a party amount to excusable neglect. First, the Court must find that the party's actions constitute neglect. If so, the Court must then determine that the neglect is excusable.

■ According to the Supreme Court, to act with neglect is "to give little attention or respect to a matter . . . or to leave undone or unattended to esp[ecially] through carelessness." *Pioneer*, — U.S. at —, 113 S.Ct. at 1494, *quoting* Webster's Ninth New Collegiate Dictionary 791 (1983); *see also Universal Reinsurance Corp. v. Allstate Insurance Co.*, 16 F.3d 125 (7th Cir.1993) (in contract dispute, the term "neglect" includes both excusable and culpable omissions). Ziebell's attorneys did not miss the claims bar date wilfully in this case, but inadvertently forgot to follow their client's instructions and file a proof of claim. Clearly, the attorneys' failure to file a timely proof of claim is the result of neglect, which, in turn, is attributable to Ziebell. *Pioneer*, — U.S. at —, 113 S.Ct. at 1499.[14] Accordingly, Ziebell's failure to file a timely proof of claim constitutes neglect.

■ With respect to the requirement that the neglect be "excusable," the Supreme Court reasoned that this qualifier would "deter creditors or other parties from freely ignoring court-ordered deadlines in the hopes of winning a permissive reprieve under Rule 9006(b)(1)." *Id.*, at —, 113 S.Ct. at 1498. To evaluate what is "excusable," the Supreme Court has instructed this Court to consider equitable factors, including four factors used by the Eleventh Circuit and the Bankruptcy Court in their consideration of the *Pioneer* case, i.e., "danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.*

Applying these standards to the instant motion, Ziebell must show, on the basis of new evidence or due to a prior mistake of

14. This subject is discussed more fully, *infra*, p. 667.

fact or law, that its counsel's failure to file a proof of claim was the result of neglect but that in light of the four factors endorsed by the Supreme Court this Court can exercise its discretion to excuse this neglect. *Pioneer,* —— U.S. at ——, 113 S.Ct. at 1492. An analysis of the four factors leads the Court to conclude that Ziebell has sustained this burden:

### 1. *Danger of Prejudice to the Debtor*

The Court is required to consider the impact on Dartmoor were this Court to find that Ziebell's conduct amounted to excusable neglect. *Pioneer,* —— U.S. at ——, 113 S.Ct. at 1498. In *Pioneer,* the petitioner did not challenge the lower court's conclusion that acceptance of the late claim caused no danger of prejudice to the debtor. *Id.,* at ——, 113 S.Ct. at 1499. In the instant proceeding, the Creditors' Committee alleges that Dartmoor and its reorganization process will be prejudiced by the allowance of Ziebell's substantial claim at this late date. The Creditors' Committee plans to object to the claim based upon its merits and claims that litigating the merits of Ziebell's claim will dissipate the assets of Dartmoor's bankruptcy estate when these assets could be put to better use in the reorganization plan. Findings of Fact and Conclusions of Law Proposed by Creditors' Committee, p. 6.

However, the estate will bear no greater cost than it would have if Dartmoor had scheduled Ziebell's claim properly. This prejudice claimed by the Creditors' Committee does not arise from the fact that Ziebell did not file its proof of claim on time, but rather because of disagreement about the validity of the claim itself. In essence, the Committee seeks to get rid of Ziebell's claim through a loophole created by Dartmoor's own neglect in failing to schedule this known claim originally and then failing to amend the schedules when the omission was called to Dartmoor's attention. Thus, while the addition of Ziebell's substantial claim will affect plan negotiations and cause some delay, these results do not constitute the type of

prejudice which the Supreme Court sought to avoid via the "excusable neglect" standard, as these effects are not the result of Ziebell's failure to file, but of the claim itself.[15]

### 2. *Length of Delay and its Potential Impact on Judicial Proceedings*

To analyze whether Ziebell's neglect is excusable, the Court also must consider the potential "disruption to efficient judicial administration posed by the late filings." *Pioneer,* —— U.S. at ——, 113 S.Ct. at 1489. As previously noted, fixing a bar date is not merely a routine step, but rather it promotes efficiency in the reorganization process by promptly identifying claims that the plan must consider for the Debtor and other plan proponents. The Seventh Circuit recently made the following observations about time restrictions:

> Ignoring deadlines is the surest way to lose a case. Time limits coordinate and expedite a complex process; they pervade the legal system, starting with the statute of limitations. Extended disregard of time limits (even the non-jurisdictional kind) is ruinous. 'Lawyers and litigants who decide that they will play by rules of their own invention will find that the game cannot be won.' Litigants whose lawyers fall asleep at crucial moments may seek relief from the somnolent agents; inexcusable inattention to the case (the only sensible description of what happened here) does not justify putting the adversary to the continued expense and uncertainty of litigation.

*United States v. Golden Elevator, Inc.,* 27 F.3d 301, 303 (7th Cir.1994) (affirming district court's refusal to reinstate lawsuit after United States missed several deadlines and then failed to file amended complaint within time prescribed), *quoting Northwestern Nat'l Insurance Co. v. Baltes,* 15 F.3d 660, 663 (7th Cir.1994).

Ziebell moved to file its Proof of Claim Instanter on June 16, 1994, slightly more than two weeks after the final bar date on May 31, 1994. The length of the delay in

---

**15.** At the hearing on this Motion for Reconsideration, the Court repeatedly stated that the Court's decision on this motion would not de-

pend upon the merits of Ziebell's claim against Dartmoor. The Court continues to hold that view.

this proceeding is remarkably similar to the length of the delay in *Pioneer*.[16] In *Pioneer*, the Supreme Court found that such a brief delay ordinarily would not have an adverse effect on efficient judicial administration of a Chapter 11 case. *Pioneer*, —— U.S. at ——, 113 S.Ct. at 1499. Since no plan was negotiated, drafted, filed or confirmed within the several week period between the bar date and Ziebell's filing, there are no previously established amounts of distribution which would be adversely affected by deeming Ziebell's claim to be timely filed. Thus, this Court holds that the short delay in Ziebell's seeking relief from the bar date has had little or no negative impact on the efficient judicial administration of this Chapter 11 case.[17]

### 3. Reason for the Delay, Including Whether It Was Within the Reasonable Control of the Movant

When a party seeks relief from the effect of a bar date, to determine whether the party's neglect was excusable, a Court should consider not only the impact, but also the culpability of the party in bringing about the delay. The Supreme Court in *Pioneer* found that an attorney's inadvertent failure to file a proof of claim was, in fact, excusable neglect within the meaning of Rule 9006(b)(1). *Pioneer*, —— U.S. at ——, 113 S.Ct. at 1499. The Court further observed that the attorney's shortcomings were attributable to the client, even if the client itself was not at all neglectful. *Id.; Link v. Wabash Railroad*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); *United States v. 7108 N. Grand Avenue*, 15 F.3d 632 (1994); *Deppe v. Tripp*, 863 F.2d 1356 (7th Cir.1988). "Absolution exists only for 'excusable neglect'; **more culpable conduct by the attorney** has mortal consequences for the client's case." *Johnson v. Gudmundsson*, 35 F.3d 1104 (7th Cir.1994) (emphasis added).

In assessing the cause for the delay in *Pioneer*, the Court went through the following analysis:

[W]e give little weight to the fact that counsel was experiencing upheaval in his law practice at the time of the bar date. We do, however, consider significant that the notice of the bar date provided by the Bankruptcy Court in this case was outside the ordinary course in bankruptcy cases. As the Court of Appeals noted, ordinarily the bar date in a bankruptcy case should be prominently announced and accompanied by an explanation of its significance. [citation omitted]. We agree with the court that the "peculiar and inconspicuous placement of the bar date in a notice regarding a creditor's meeting," without any indication of the significance of the bar date, left a "dramatic ambiguity" in the notification. This is not to say, of course that respondents' counsel was not remiss in failing to apprehend the notice. To be sure, were there any evidence of prejudice to petitioner or to judicial administration in this case, or any indication at all of bad faith, we could not say that the Bankruptcy Court abused its discretion in declining to find the neglect excusable.

*Pioneer*, —— U.S. at ——, 113 S.Ct. at 1500.

Unlike the creditor and attorney in *Pioneer*, neither Ziebell nor its attorneys received any notification of the bar date for filing claims against Dartmoor. Dartmoor acknowledges both its knowledge of Ziebell's claim and the absence of this claim in its schedule of creditors. Ziebell and its attorneys also were fully aware of Dartmoor's bankruptcy case and knew that Ziebell was not listed as a creditor, yet took no steps to protect Ziebell's substantial claim which was at risk of being discharged for no payment.

■ The Supreme Court in *Pioneer* observed that "inadvertence, ignorance of the

---

**16.** In *Pioneer*, the bankruptcy court set the bar date for August 3, 1989 and Respondents filed their proofs of claim on August 23, 1989. *Pioneer*, —— U.S. at ——, 113 S.Ct. at 1492.

**17.** The Seventh Circuit has stated anecdotally that the time spent on the appeals process after a party misses a deadline exacerbates the delay and prejudice to the bankruptcy case, even if the

filing was only several days late. *In the Matter of Bulic*, 997 F.2d 299, 303 (7th Cir.1993). Clearly this has occurred in the present instance. However, the Seventh Circuit did not conclude that these litigation delays should be a substantial factor in determining whether failure meet a deadline was the result of excusable neglect. *Id.*

rules, or mistakes construing the rules do not usually constitute 'excusable' neglect." *Pioneer*, —— U.S. at ——, 113 S.Ct. at 1496. Ziebell argues that it failed to file its proof of claim in a timely fashion because one of the attorneys responsible for handling the claim, John Plattner, mistakenly believed that the bar date in Chapter 11 cases was the same as the date the plan was due, which in this instance was July 18, 1994: "Plattner thought he was *five weeks early* in preparing Ziebell's claim. Plattner was not careless or neglectful—he simply acted in a manner consistent with his belief that July 18 was the claims bar date." Ziebell's Post Trial Memorandum, p. 2.[18] Plattner testified to this effect during the hearing on Ziebell's Motion to Reconsider. The Court does not believe that Plattner could have misconstrued the Court's order as setting the bar date, especially since Plattner did not mention his alleged confusion in his deposition taken a few days before the hearing. However, even if the Court accepted that Plattner had a good faith belief that the claims bar date and the plan date were the same, this carelessness and misinterpretation of the rules cannot be said to be excusable in of itself. Plattner testified that five percent or less of his practice consisted of bankruptcy matters, and that prior to his representation of Ziebell, he had zero percent experience with Chapter 11 matters. But for Dartmoor's knowledge of Ziebell's claim and its lack of action to handle that claim fairly, this Court would not find "excusable" Plattner's failure to read the Federal Rules of Bankruptcy Procedure or the Bankruptcy Code or to consult with more knowledgeable counsel in light of his total lack of experience with Chapter 11 and his

minimal exposure to bankruptcy law generally.[19] Had the bankruptcy files been examined periodically with ordinary care, Ziebell's counsel easily would have discovered the bar date. In addition, neither Ziebell nor its counsel have offered any valid excuse for waiting four months after they discovered the fact of Dartmoor's bankruptcy to file a proof of claim.

However, the fact that Dartmoor failed to give any notice of the bar date to Ziebell must be considered in assessing the blame for the delay and whether the cause was excusable. In *Pioneer*, the Court found that the late filing was excusable, even though the creditor received notice, because the form of the notice was unusual. If the Supreme Court was willing to give such leeway to the creditor in *Pioneer*, this Court will exercise its discretion to relieve Ziebell, in spite of its own attorneys' negligence, due to Dartmoor's failure to amend the incomplete schedules in light of its knowledge of Ziebell's status as a creditor.

■ The blameworthiness of the attorneys for Ziebell and Dartmoor for the necessity of the instant proceeding is virtually equal. However, the Court must choose who will bear the ultimate responsibility. This Court holds when both the debtor and creditor are guilty of significant negligence in the handling of a claim and the debtor is aware of a creditor's claim, then, to quote a classic rule of baseball, "a tie goes to the runner." Thus, the Court holds that while it was within Ziebell's power to have prevented the instant proceeding, it was equally within the

---

18. The Court's sua sponte order setting the plan date reads as follows: "On motion of Court, debtor is ordered to file Plan and Disclosure Statement by June 18, 1994 unless excused by further order of Court on notice of motion and for good cause shown. Nothing in this order will extend the debtor's exclusive time within which to file Plan and Disclosure Statement."

19. In a similar case, a creditor's attorney pled ignorance of the bankruptcy rules as a reason for his failure to file a timely proof of claim; the court rejected his argument, stating that "failure of counsel to read or follow the rules is 'clearly within the control of the movant.'" *In re Specialty Equipment Companies, Inc.*, 159 B.R. 236

(Bankr.N.D.Ill.1993), *quoting In the Matter of Bulic*, 997 F.2d 299, 302 (7th Cir.1993). In other jurisdictions, mistakenly believing that the bar date was a different date constitutes inadvertence, not excusable neglect, even if all of the other *Pioneer* factors favor the late filer. *See, e.g., In re Au Coton, Inc.*, 171 B.R. 16 (S.D.N.Y. 1994) (Bankruptcy Court acted within its discretion when disallowing late proof of claim after lessor received Rejection Order stating bar date but lessor's counsel had mistaken belief that a later date was the bar date); *In re Springfield Contracting Corp.*, 156 B.R. 761 (Bankr.E.D.Va. 1993) (ignorance of the rules will not constitute excusable neglect).

Debtor's power to do the same.[20] This being the case, the Court will exercise its discretion to relieve Ziebell of culpability for the need for the current dispute.

#### 4. *Whether the Movant Acted in Good Faith*

■ Clearly, any bad faith on the part of a party seeking relief from a bar date would be a sufficient reason for a court to find that a party's neglect in meeting a deadline is not "excusable." *Bulic,* 997 F.2d at 303 (dismissing case for failure to timely designate after finding of fact that bankruptcy case not filed in good faith but as litigation tactic in family feud). The petitioner in *Pioneer* did not challenge the findings of the lower court that the respondent acted in good faith. *Pioneer,* —— U.S. at ——, 113 S.Ct. at 1499.

In the instant dispute, the Creditors' Committee challenges Ziebell's assertions that its principals and attorneys acted in good faith. Neither Ziebell nor its counsel acted reasonably in protecting Ziebell's rights in the Chapter 11 case after early March, 1993, and has offered no credible justification for its shortcomings in that regard. In addition, Ziebell's original motion for leave to file their proof of claim instanter did not disclose Ziebell's knowledge of the Dartmoor bankruptcy.[21] However, while these facts may indicate serious errors in judgment, they are insufficient to lead this Court to conclude that Ziebell acted in bad faith in the instant dispute. At all times since Ziebell's unfortu-

nate failure to disclose came to the Court's attention and since Ziebell's retention of new counsel, Ziebell has acted with the appropriate good faith.[22]

After hearing and measuring the credibility of the testimony and the weight to be accorded to the evidence, this Court concludes that a balancing of the equities favors Ziebell under the *Pioneer* test.

### IV. *The Debtor's Failure to Provide Notice To Ziebell, A Known Creditor, Resulted in a Violation of Bankruptcy Law, and if This Court Fails To Give Relief, Will Also Result in the Denial of Due Process.*[23]

■ Even if this Court did not find that Ziebell's neglect was excusable under the *Pioneer* test, the Court could not ignore the implications of the fact that Dartmoor was aware of Ziebell's status as a creditor and, nevertheless, failed to comply with its obligations with regard to that claim under the Bankruptcy Code. A Debtor has a statutory duty to list known creditors in its schedules. 11 U.S.C. § 521; Fed.R.Bankr.P. 1007.[24] Likewise, the Debtor must give known creditors at least twenty days notice of the bar date for filing claims against the estate. Fed.R.Bankr.P. 2002(f).[25] If a creditor is not given reasonable notice of the bankruptcy and of the bar date, that creditor's claim cannot be discharged constitutionally. *In re Longardner and Assoc., Inc.,* 855 F.2d 455

---

**20.** *See* the Court's discussion of due process, *infra,* p. 669.

**21.** This Court already has expressed its disturbance with Ziebell's failure to state all relevant facts in that motion.

**22.** The Court remains skeptical about the veracity of Mr. Plattner's testimony regarding his belief that the plan date was also the bar date, but the Court does not attribute this act of questionable judgment to Ziebell and takes notice that Ziebell is represented by other counsel in the instant proceeding.

**23.** The court in *Pioneer* did not address the issue of due process, possibly because in that case the Debtor had given notice of the bar date to the creditor, albeit in an inconspicuous manner out-

side of the ordinary course of business. *Pioneer,* —— U.S. at ——, 113 S.Ct. at 1500.

**24.** Section 521 provides that "[t]he debtor shall (1) file a list of creditors, and unless the court orders otherwise, a schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of the debtor's financial affairs." Fed.R.Bankr.P. 1007(a)(1) states that "[i]n a voluntary case, the debtor shall file with the petition a list containing the name and address of each creditor unless the petition is accompanied by a schedule of liabilities."

**25.** Rule 2002(f) provides that "[e]xcept as provided in subdivision (1) of this rule, the clerk, or some other person as the court may direct, shall give the debtor, all creditors and indenture trustees notice by mail of ... (3) the time fixed for filing claims pursuant to Rule 3002."

(7th Cir.1988), *cert. denied*, 489 U.S. 1015, 109 S.Ct. 1130, 103 L.Ed.2d 191 (1989).

To determine whether notice is "reasonable," the Court must consider the totality of the circumstances, including whether alleged inadequacies prejudiced the creditor, *People ex rel. Hartigan v. Peters*, 871 F.2d 1336 (7th Cir.1989), and whether the creditor received notice in time to take "meaningful action" in response to the impending deprivation of its rights. *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978); *Chicago Cable Communications v. Chicago Cable Commission*, 879 F.2d 1540, 1545 (7th Cir.1989), *cert. denied*, 493 U.S. 1044, 110 S.Ct. 839, 107 L.Ed.2d 835 (1990).

However, the Court cannot undertake this analysis with unbridled discretion; to determine what constitutes adequate notice, case law interpreting the Bankruptcy Code distinguishes between types of bankruptcy cases. If a creditor knows that a Chapter 7 or Chapter 13 case is pending, even if the creditor discovered the bankruptcy through informal means, the creditor's actual knowledge satisfies due process concerns. *Cf.* 11 U.S.C. §§ 523(a)(3), 1141(d).[26]

However, if the debtor is a corporate Chapter 11 debtor, the Supreme Court has said that "even creditors who have knowledge of a reorganization have the right to assume that they will receive reasonable notice of relevant dates before their claims are barred." *City of New York v. New York, N.H. & H.R. Co.*, 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1952) (publication of the bar order in newspaper did not satisfy due process as required by Fifth Amendment of United States Constitution). While the Supreme Court so ruled under the former Bankruptcy Act of 1898, *City of New York v. New York, N.H. & H.R. Co.*, 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1952), the Court of Appeals for the Seventh Circuit, has held that this requirement applies with equal force under the Bankruptcy Code. *In the Matter of Chicago, Rock Island, and Pacific Railroad Co.*, 788 F.2d 1280, 1283 (7th Cir. 1986) (trustee has no duty to give notice to creditors who he reasonably believes have abandoned their claims, but generally creditors are entitled to actual notice of impending discharge even if they have knowledge of the bankruptcy). Likewise, a bankruptcy court in this District recently held that "[a] Chapter 11 debtor violates a known creditor's due process rights under the Fifth Amendment to the United States Constitution by failing to give timely notice of the claims bar date." *In re Pettibone Corp.*, 162 B.R. 791, 806 (Bankr.N.D.Ill.1994, Schmetterer, J.) (creditor's failure to file timely proofs of claim was result of both excusable neglect and lack of notice from debtor, in spite of fact that claimants had knowledge that debtor had filed Chapter 11 petition), *citing Mullane v. Central Hanover Bank and Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950).[27]

Courts in other jurisdictions agree that a creditor's incidental knowledge that its debtor is in bankruptcy does not, in and of itself, vitiate the debtor's notification duties or shift the burden to the creditor to file a claim without proper notification. *See, e.g., Rowe International, Inc. v. Herd*, 840 F.2d 757 (10th Cir.1988); *Sheftelman v. Standard Metals Corp.*, 839 F.2d 1383, 1386 (10th Cir. 1987), *cert. dismissed*, 488 U.S. 881, 109 S.Ct. 201, 102 L.Ed.2d 171 (1988); *Reliable Electrical Co., Inc. v. Olson Construction Co.*, 726 F.2d 620 (10th Cir.1984); *Broomall Industries, Inc. v. Data Design Logic Systems, Inc.*, 786 F.2d 401 (Fed.Cir.1986); *In re Spring Valley Farms, Inc.*, 863 F.2d 832, 835

---

**26.** Section 523 prohibits a debtor from discharging a debt if the debt is "(3) neither listed nor scheduled under section 521(1) of this title, with the name, **if known to the debtor,** of the creditor to whom such debt is owed, in time to permit (A) ... timely filing of a proof of claim, unless such creditor had notice or **actual knowledge** of the case in time for such timely filing." (emphasis added). This provision applies only discharges under sections 727, 1141, 1228(a), 1228(b), or 1328(b). Section 1141(d)(2) makes clear that section 523(3) affects only individual debtors in Chapter 11, not corporate debtors, stating that "[t]he confirmation of a plan does not discharge an individual debtor from any debt excepted from discharge under section 523 of this title."

**27.** This Court is not bound by the *Pettibone* decision, but agrees with the reasoning of his colleague and affords great weight to his decision.

(8th Cir.1989). In *Reliable,* the debtor's attorney telephoned the creditor and informed him of the Chapter 11 case, but gave him no additional notice of the bar date or other relevant deadlines. The court held that the creditor had no further duty to inquire about deadlines, as he had a "right to assume" that he would receive all statutorily mandated notices since he was a known creditor. *Id.,* 726 F.2d at 622, *citing New York v. New York, N.H. & H.R. Co.,* 344 U.S. at 297, 73 S.Ct. at 301.

The weight of authority leads this Court to conclude that a debtor's failure to give proper notice to a known but unscheduled creditor is not overcome by the unscheduled creditor's inquiry notice of the bar date. *See generally* 11 U.S.C. § 521, Fed.R.Bankr.P. 2002.

Therefore, in spite of Ziebell's careless inadvertence, Ziebell's knowledge of Dartmoor's bankruptcy case does not overcome the Debtor's constitutional and statutory obligations to provide all known creditors with meaningful and timely notice of all significant steps in its Chapter 11 case, including the May 31, 1994 bar date. Dartmoor has acknowledged its awareness of Ziebell's status of a creditor, its failure to schedule Ziebell as a creditor in a timely fashion and its failure to formally notify Ziebell of the claims bar date. As a consequence, if this Court were to deny Ziebell's request to deem its proof of claim as timely filed, it would violate Ziebell's Due Process rights under the Fifth Amendment to the United States Constitution. Therefore, the Court determines that it must alter its prior order denying Ziebell's motion to have its late proof of claim deemed to be timely filed.

### ORDER

Enter order that Ziebell's Motion for Reconsideration is granted. Further ordered that Ziebell's proof of claim is deemed to be timely filed.