In re SHOP N' GO PARTNERSHIP, Debtor.

William G. Schwab, Trustee for Shop N' Go Partnership, Plaintiff,

v.

United States of America, Internal Revenue Service, Defendant.

Bankruptcy No. 5–94–00705.
Adversary No. 5–98–00311A.

United States Bankruptcy Court, M.D. Pennsylvania.

March 15, 2001.

**812**

William G. Schwab, Trustee in Bankruptcy, Lehighton, Counsel for Plaintiff.

R. Scott Clarke, U.S. Department of Justice—Tax Division, Washington, DC, Counsel for Defendant.

Matthew Haggerty, Assistant U.S. Attorney, Scranton, Local Counsel for Defendant.

### *OPINION*[1]

JOHN J. THOMAS, Bankruptcy Judge.

The Trustee in this Chapter 7 case is requesting this Court to use its equitable powers to disgorge a sum of money paid to the Internal Revenue Service ("IRS") during a Chapter 11 reorganization proceeding. That payment was made pursuant to a settlement agreement approved by this Court. The Trustee claims this payment was made fraudulently, was inconsistent with the Chapter 11 Reorganization Plan and the Bankruptcy Code, and was a violation of the Debtor's in Possession ("DIP") fiduciary duty to its creditors. This Court is unpersuaded by the Trustee's arguments and, accordingly, finds in favor of the Defendant, IRS.

Pursuant to a settlement agreement with the IRS in a Chapter 11 proceeding, the DIP paid its FICA and other prepetition tax obligations to the IRS. The settlement provided that the secured tax debt would be reduced from $198,488.90 to $120,000, and the administrative expenses would be reduced from $15,383.02 to $12,623.21. It also provided that the pay-

---

1. Drafted with the assistance of Seth Cohen, Law Clerk.

ment of these monies would take place within 30 days after the confirmation of the Plan, the IRS would change its secured status to unsecured priority status, and the IRS would agree to the DIP's Chapter 11 Plan. The DIP paid $132,597.11 on August 22, 1995 to the IRS after the Plan was confirmed and before the other Chapter 11 creditors. Thereafter, the Chapter 11 was converted to a Chapter 7 on January 27, 1997. When the Chapter 7 Trustee was appointed, he found that the estate was insolvent. Thus, in November 1998, he petitioned this Court to disgorge that payment the DIP made to the IRS. The Trustee alleges that the DIP perpetrated a fraud on the postpetition creditors when it made payment to satisfy the prepetition tax debt to the IRS before satisfying the post-filing expenses of the Chapter 7 bankruptcy. (Brief in Support of the Position of the Trustee for Recoupment of Funds Paid to IRS filed 2/17/00 at 8 (Doc. # 21A).)

Bankruptcy Rule 9024, Relief From Judgment or Order, incorporates Rule 60(b) of the Federal Rules of Civil Procedure. Rule 60(b) states: "On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from final judgment, order, or proceeding for the following reasons: ... (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; ...." Fed.R.Civ.P. 60(b).

Here, the Trustee implicated the element of fraud under Rule 60(b)(3). In *Field v. Mans,* 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995), the Supreme Court looked to the common law in its analysis of fraud, fraudulent misrepresentation, and deceit. It wrote, "the most widely accepted distillation of the common law of torts [is] the Restatement (Second) of Torts (1976)." *Id.,* 116 S.Ct. at 443–444.

That "distillation" can be found in Section 525 of the Restatement, Liability for Fraudulent Misrepresentation, which incorporates the following elements established by the historical development of the common law in causes of action in deceit (fraud):

1. A false representation made by the defendant. In the ordinary case, this representation must be one of fact.

2. Knowledge or belief on the part of the defendant that the representation is false—or, what is regarded as equivalent, that he has not a sufficient basis of information to make it. This element often is given the technical name of "scienter."

3. An intention to induce the plaintiff to act or to refrain from action in reliance upon the misrepresentation.

4. Justifiable reliance upon the representation on the part of the plaintiff, in taking action or refraining from it.

5. Damage to the plaintiff, resulting from such reliance.

William L. Prosser, Handbook of the Law of Torts § 100 (3rd ed.1964).

In addition, "[a] representation of the maker's own intention to do or not to do a particular thing is fraudulent if he does not have that intention." Restatement (Second) of Torts § 530(1) (1976).

b. To be actionable the statement of the maker's own intention must be fraudulent, which is to say that he must in fact not have the intention stated.... If the statement is honestly made and the intention in fact exists, one who acts in justifiable reliance upon it cannot maintain an action of deceit if the maker for any reason changes his mind and fails or refuses to carry his expressed intention into effect.

Restatement (Second) of Torts § 530(1) cmt. b (1976).

The Supreme Court set the preponderance of the evidence standard as the appropriate burden to be used when analyzing nondischargeability for fraud under § 523(a). *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). This Court sees no reason to stray from using this standard when analyzing disgorgement of payments made due to fraud. Therefore, essential to the Trustee prevailing on this Complaint is meeting the burden of proving, by a preponderance of the evidence, that the parties to the settlement agreement committed an actual fraud, i.e., intentionally made false representations to induce the payment of the prepetition tax debt to the detriment of the other creditors. For the reasons below, this Court finds the Trustee has not met his burden.

In furtherance of his position, the Trustee argued that if the settlement agreement was intended to change the payment priorities under the Plan, the creditors did not receive adequate notice. (Trustee's Brief at 3 (Doc. # 21A).) Due process requires that notice be sufficiently adequate "to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). In determining reasonable notice, "the court must consider the totality of the circumstances, including whether the alleged inadequacies prejudice the creditors and whether the creditor receives notice in time to take 'meaningful action' in response to the impending deprivation of its rights." *In re Dartmoor Homes, Inc.*, 175 B.R. 659, 670 (Bankr.N.D.Ill.1994). Here, the notice outlined specific terms of the agreement including the amount and timing of payment to the IRS and informed the creditors of the time requirements for filing objections to the agreement. (Govern-

ment Exhibit 5.) This Court finds, as a conclusion of law, that reasonable and adequate notice of the settlement was given to the creditors. There are no facts to the contrary. Thus, the Trustee has not proven that the DIP misled the creditors with regard to notice of the stipulated settlement agreement.

In addition, the Trustee has not met his burden of showing that the DIP and the IRS intended to deceive the other Chapter 11 creditors. There was no misrepresentation of the DIP's intent to pay the IRS according to the settlement agreement. Rather, the parties intended to create a settlement agreement and for that settlement, the IRS was to be paid 30 days after confirmation of the plan. Their intent to inform the creditors of this agreement is evidenced by the notice which was circulated to the creditors and all parties in interest. This has been stipulated to by both the Trustee and IRS in this case. (Stipulation of Facts filed 1/19/00 at 2–3 (Doc. # 19A).) Thus, this Court concludes that the Trustee has not met his burden of proving that the DIP fraudulently misrepresented the settlement agreement.

*Violation of Debtor's Fiduciary Duty to Creditors.*

Another argument the Trustee asserts to justify disgorgement is that the DIP violated its fiduciary duty to pay creditors according to the Plan. (Trustee's Brief at 7 (Doc. # 21A).) It is well settled that the DIP is a fiduciary of the estate, creditors and the Court, and is obligated to protect and conserve property in its possession. *In re Sal Caruso Cheese, Inc.*, 107 B.R. 808, 816, 817 (Bankr.N.D.N.Y. 1989); *See also, Wolf v. Weinstein*, 372 U.S. 633, 649–53, 83 S.Ct. 969, 979–81, 10 L.Ed.2d 33 (1963)(DIP is bound by a duty of loyalty); *In re Photo Promotion Assoc., Inc.*, 72 B.R. 606, 610 (Bankr.S.D.N.Y. 1987), *In re Devers*, 759 F.2d 751, 754 (9th

Cir.1985), *In re Halux, Inc.*, 665 F.2d 213, 216 (8th Cir.1981)(DIP has duty to protect and conserve property of the estate). With hindsight, it is easy to argue that making payment to the IRS was not in the best interest of the estate. However, at the time the settlement was approved, it was deemed to be in the best interest of the estate by the DIP, the Court and the creditors, as evidenced by the fact that no party objected to the settlement agreement. (Stipulation of Facts at ¶ 12 (Doc. # 19A).) Therefore, this Court finds that the DIP did not violate this duty when they paid the IRS pursuant to the settlement agreement.

*Inconsistency between the Plan and Settlement Agreement*

The Trustee wants this Court to use its equitable powers to find that the inconsistencies between the settlement agreement and the confirmed Plan, both approved by this Court, should result in revocation of the settlement agreement.[2]

 The Trustee is asking this Court to sit in equity and grant him relief. "The court may issue any order, process, or judgment, that is necessary or appropriate to carry out the provisions of this Title [11]." 11 U.S.C. § 105. However, "a court may not disregard a specific Code section addressing an issue and instead employ its equitable powers to achieve a result not contemplated by the Code." *In re Fesco Plastics Corp.*, 996 F.2d 152, 28 C.B.C.2d 1503 (7th Cir.1993). *Accord, In re Sadkin*, 36 F.3d 473, 32 C.B.C.2d 575 (5th Cir.1994); *In re Olson*, 120 F.3d 98, 38 C.B.C.2d 331 (8th Cir.1997); *Sea Harvest v. Riviera Land Co.*, 868 F.2d 1077, 20 C.B.C.2d 1269 (9th Cir.1989). In other words, the Court can use its equitable powers, but only *in furtherance* of the Code.

Action taken by the Court in the form of approving and confirming a reorganization Plan has been considered final, notwithstanding the noncompliance of the plan to certain code provisions. *In re Szostek*, 886 F.2d 1405, 1409 (3rd Cir.1989). An order for a payment to be made pursuant to a settlement agreement is no different from this notion of the finality of confirmed plans. Nevertheless, the question remains, whether this Court, in the absence of specific statutory authority or cause under Federal Rule of Bankruptcy Procedure 9024, has the legal authority to disgorge a payment made pursuant to its own order.

Rather than rely on a Code section, the Trustee focuses on the inconsistency between the settlement agreement and the confirmed Plan, namely the fact that the settlement agreement allowed the IRS to get paid ahead of the DIP's other creditors. He argues that this inconsistency

---

2. The Trustee argues that the payment the IRS received should be disgorged because it was inconsistent with the Plan and the priorities of the Code i.e., that administrative costs are to be the first expenses paid. The Code gives the Trustee of the bankruptcy estate certain powers to avoid payments made in derogation of either the Plan or the Code. 11 U.S.C. § 549.

The avoidance powers of § 549 of the Bankruptcy Code allows the Trustee to retrieve funds that have been paid postpetition by the debtor to another. Specifically, "[T]he trustee may avoid a transfer of property of the estate—(1) made after the commencement of the case; and (2) ... [B] that is not authorized by this title or by the court." 11 U.S.C. § 549(a).

In effect, the Trustee is trying to avoid the payment made to the IRS through disgorgement. He could do so if that payment was made after the commencement of the case, and if it was not authorized under the Bankruptcy Code or by the court. The facts fail the second prong of this test as this Court authorized the payment to the IRS. Therefore, § 549 is not an avenue the Trustee can use to have the monies paid to the IRS disgorged.

did not comply with the payment priorities of administrative creditors provided for in the confirmed Plan which comported with the Bankruptcy Code. (Trustee's Brief at 7–8 (Doc. # 21A).) The Code allows for the payment of Chapter 7 administrative expenses to be paid ahead of other Chapter 11 creditors, including secured creditors such as the IRS. 11 U.S.C. §§ 1129(a)(9), 507. As such, according to the Trustee, the confirmed Plan takes precedence over a court approved settlement agreement. The Plan, he argues, controls this case, and, therefore, the Court should disgorge the payment made to the IRS.

Payments made to creditors in derogation of a confirmed plan *(or order)* have been disgorged by courts. *In re Talbot* focused on this aspect of disgorgeability. *In re Talbot,* 124 F.3d 1201 (10th Cir.1997). Although a Chapter 13 case, the Talbots paid the IRS to release its tax lien on their house so they could sell it. The parties, in that instance, acted on their own without guidance or approval from the court or other creditors. The Bankruptcy Court's ordering the IRS to disgorge all funds it extracted from the debtor to satisfy prepetition tax obligations in derogation of the confirmed plan was affirmed only to the extent that the IRS received more than it should have under the confirmed plan and order. In the case at hand, however, there was a stipulated settlement agreement that was noticed, not objected to by any creditor or party in interest, and approved by this Court. This distinction allows this Court to reach the conclusion that a settlement agreement entered into as part of a Chapter 11 proceeding and affirmed through a court order has a similar effect as a confirmed plan.

As earlier indicated, the finality of confirmed plans is well settled. 11 U.S.C. § 1141; *In re Szostek,* 886 F.2d 1405 (3d Cir.1989); *IRS v. Norton,* 717 F.2d 767 (3d Cir.1983); *Republic Supply Co. v. Shoaf,* 815 F.2d 1046 (5th Cir.1987). The *Republic Supply* Court stated, "regardless of whether the plan provision to release the guarantor was inconsistent with the bankruptcy laws or within the authority of the bankruptcy court, it was nonetheless included in the plan. Since the Plan was confirmed without objection, nor was an appeal taken, the plan was not reviewable on its merits." *Republic Supply,* 815 F.2d at 1050, as cited in *Szostek,* 886 F.2d at 1409–10. Here, the Trustee argues that the settlement agreement was inconsistent with the Plan. Because no creditor or party in interest objected to the settlement agreement or its inconsistencies, and this Court approved it, the finality of the payment made to the IRS was a reasonable expectation of all parties to the Chapter 11 proceeding. This notion of finality, in conjunction with the lack of legal remedies available to the Trustee, leads this Court to determine that it does not have cause to order a disgorgement of the payment in question made to the IRS.

Courts have ordered the disgorgement of unnoticed and unapproved postpetition disbursements to professionals. In *In re Pannebaker,* the court held that postpetition disbursements from the estate made without court approval to professionals were to be disgorged. *In re Pannebaker Custom Cabinet Corp.,* 198 B.R. 453, 464 (Bankr.M.D.Pa.1996). To do otherwise would have a negative "impact upon the integrity of the bankruptcy system by subverting specific requirements ...." *Id.* The court in *In re Lochmiller* disgorged payments made to professionals pursuant to an interim order. *In re Lochmiller Indust.,* 178 B.R. 241 (Bankr.S.D.Cal. 1995). Since the payments in *In re Lochmiller* were pursuant to an interim order, or subject to further review, it is foreseeable that a recipient of such a payment may have to return those funds. *In re*

*Lochmiller,* 178 B.R. at 252, *citing In re Kearing,* 170 B.R. 1, 6–7 (Bankr.D.Dist. Col.1994). The case at hand is not dealing with unauthorized or interim payments to professionals. Rather, the payment in question was made pursuant to a settlement agreement with court approval. Thus, disbursements made with court approval should not be disgorged because such payment does not subvert the Code's requirements.

In the absence of an application of Rule 60(b), policy considerations weigh heavily in favor of honoring the settlement agreement. Expectation of the parties that entered into the settlement agreement should be upheld. If not, neither the IRS nor the DIP would have entered into the agreement and there would exist a chilling effect on all future settlement agreements. *In re Anolik,* 207 B.R. 34 (Bankr.D.Mass. 1997), *In re Unitcast, Inc.,* 219 B.R. 741 (6th Cir. BAP 1998)(parties' expectation of finality of the payment). In addition, the Bankruptcy Code and Congress favor compromises in bankruptcy proceedings to minimize litigation and expedite administration of the estate. *In re Martin,* 91 F.3d 389, 393 (3rd Cir.1996) *citing* 9 Collier on Bankruptcy ¶ 9019.03[1] (15th ed.1993). As such, policy warrants this Court to maintain the integrity of parties' good faith efforts to resolve their conflicts through settlement agreements.

In conclusion, the Trustee has not given this Court sufficient justification to undo the Order confirming the settlement agreement and subsequent payment made pursuant to that Order. This Court declines to order the IRS to disgorge the payment it received pursuant to a noticed and ordered settlement agreement.

An Order will follow.

### ORDER

For those reasons indicated in the Opinion filed this date, judgment is entered in favor of the Defendant, United States of America, Internal Revenue Service, and against the Plaintiff, William G. Schwab, Trustee for Shop N' Go Partnership.