Larry Kraines, Office of U.S. Trustee, Los Angeles, Cal., the Objecting Party.

## In re PACIFIC FOREST INDUSTRIES, INC., Debtor.

### Bankruptcy No. LA 88–25215–GM.

United States Bankruptcy Court,
C.D. California.

Jan. 26, 1989.

## MEMORANDUM OF OPINION RE DEBTOR'S APPLICATION TO EMPLOY COUNSEL

GERALDINE MUND, Bankruptcy Judge.

On December 1, 1988, Pacific Forest Industries, Inc. filed a petition under Chapter 11. The attorney for the debtor-in-possession is David A. Tilem. Very soon after filing this petition, the debtor-in-possession filed an application to employ Mr. Tilem as its counsel and this was presented to the United States Trustee for comment. On December 9, 1988, the United States Trustee filed and served its comment in which he objected to the application and requested a hearing. The basis of objection was that debtor's counsel proposed to have the debtor pay the monthly legal bills prior to counsel having made any interim fee application and prior to obtaining a court order allowing such a payment.

The Court set this matter for hearing and on December 29, 1988, after full argument on the matter, approved employment of David Tilem as attorney for the debtor-in-possession but submitted the issue of monthly billings. Both sides indicated that they would appeal whatever ruling is made by this Court and the Court is well aware that its ruling will have impact on the entire Bar, the United States Trustee's of-

fice and procedures, and on its judicial colleagues in the Central District of California. For that reason the Court has done a careful analysis of the legal and policy matters concerned herein and has determined that the payment procedure proposed by Mr. Tilem is not to be allowed in this case.

## PROPOSAL OF DEBTOR'S COUNSEL

Debtor's counsel has received $20,000.00 retainer for services. He proposes that after he has provided services in excess of the amount of the retainer, the debtor will be required to pay the attorney on a monthly basis for all statements of services rendered. The funds are to be held in a client trust account in accord with the rules of the State Bar of California and are not to be distributed until there is an order of the Court under 11 U.S.C. §§ 330 or 331.

Before going further it is important that the Court note that Mr. Tilem is a sole practitioner who has always made a good appearance before this Court. The Court does not question his competence nor his honesty and finds no reason to believe that if monies were put into his trust account under this proposed order, that they would become unavailable to the estate if there are not sufficient assets to pay all administrative claims in full. Clearly if the Court had any question about this attorney and his honesty, it would be improper to even consider placing the funds in his client trust account. However, this is not the situation in this case.

## ARGUMENTS OF THE APPLICANT

Mr. Tilem makes a series of appealing arguments in support of his application. His strongest arguments revolve around whether the attorney should be providing the debtor with operating capital upon which to fund the reorganization and whether the attorney must really bear the risk of whether the client can reorganize. He argues that the attorney should not be forced to let the debtor gamble with his attorney's fees and that the concerns of the attorney over whether there will be money for payment lead to direct and intense conflict between the attorney and his client. Although this is a relatively small case in terms of the amount of attorney's fees that it will generate, Mr. Tilem argues that as a sole practitioner it is detrimental to him to have to finance the case. He states that the agreement that he proposes is an arms length contract between him and his client and has been negotiated. He also notes that if the money were placed in a debtor-in-possession account this would not be sufficient, for the debtor could wipe out that account before the attorney ever knew that it had happened. On the other hand, he believes that the estate is protected through this sequestration provision for the attorney could always be required to repay any funds to which he is not eventually entitled or which would exceed his pro rata share of the available administrative money.

Mr. Tilem argues that the law does not prohibit this sequestration program, but it is merely a change and modification of local custom. He says that he is seeking sequestration and not payment; that the Bankruptcy Code does not prevent this but only deals with the allowance and disbursement of compensation or reimbursement. He believes that the sequestration program is neither an allowance nor a disbursement of the monies.

Mr. Tilem agrees with the Court that billing the debtor on a monthly basis and requiring payment at that time would alert the debtor to the cost of reorganization and also would invest the debtor in carefully monitoring the attorney and his bills.

Finally, Mr. Tilem states that the attorneys should be paid just as they do the work, analogizing them to United Parcel Service or any other administrative business creditor.

## UNITED STATES TRUSTEE'S ARGUMENTS

The United States Trustee in the person of Lawrence Kraines, Assistant United States Trustee, filed his objection to the payment plans of the application and filed a memorandum of points and authorities in response to the application. The United

States Trustee heavily relies on the opinion of *In re Knudsen Corporation,* 84 B.R. 668 (9th Cir. BAP 1988), holding that the normal way for payment of professional fees is that the professional must first make a fee application and obtain an order authorizing the payment before there can be any transfer of funds to the professional. The United States Trustee does not find the kind of special circumstances in this case to warrant a different procedure.

Beyond the *Knudsen* case, the United States Trustee argues that Congress did intend that there be a different procedure as to professionals than as to other administrative creditors and this is because the professional has a large amount of control over the case. He equates sequestration with payment and opposes having the money in the possession of the attorney, even if it is in a client trust account. He is of the opinion that the debtor should be able to operate without paying burdensome professional fees up front. He also notes that the attorney for the debtor has a very powerful position and that the methodology that is proposed is not an arms length situation but can too easily be forced on the debtor.

The United States Trustee believes that the attorney for the debtor has a duty to have an untrustworthy debtor convert or dismiss the case and not to merely protect the attorney against his own client through the use of a sequestration account. However, the United States Trustee does agree that if the attorney and his client want to set up a debtor-in-possession administrative expense account (just as there is currently a tax account and a payroll account) that would be okay. But this account should be in the possession of the debtor-in-possession and it should be free to move the money into and out of the account as part of its normal business operation.

The United States Trustee points out that although attorneys for a debtor-in-possession are required to apply for their fees even if the case is dismissed or converted, all too often the case just disappears and there is no fee application. Having the money in the attorney's possession under these circumstances is very suspect and would encourage attorneys not to apply for fees but just to keep the money.

## ANALYSIS

The issues presented raise a group of mixed legal and policy considerations. Mr. Tilem argues that no payment will have been received by him, for the money is not being tendered and accepted as extinguishing a debt, but is merely being put in a trust account as a fund from which he (and other administrative claimants) can draw at the end of the case if the reorganization is not successful. The United States Trustee argues that Congress did not intend to protect attorneys in this manner nor to treat them differently from other administrative claimants.

*Must All Administrative Creditors be Treated the Same?* One of the issues that needs to be struggled with is whether all administrative creditors are treated the same or whether there are special provisions for treatment of certain types of administrative creditors. Congress did, in fact, carve out requirements as to treatment of certain types of administrative creditors. For example, § 365(b)(4) requires the trustee/debtor-in-possession to pay currently for any services or supplies provided under a lease during the pendency of the bankruptcy but before the lease is assumed; § 365(d)(3) requires the trustee/debtor-in-possession to perform all obligations under an unexpired lease of nonresidential real property from the date of the order for relief until the lease is assumed or rejected; and § 366(b) requires the debtor to furnish the utility company with a deposit or other security within 20 days after the order for relief to protect the utility company for payment of its administrative claim for services.

Section 1108 authorizes the trustee/debtor-in-possession to operate the debtor's business without order of the Court. It is inherent in the concept of operating the business that employee wages, taxes, supplies, and other types of obligations that would be administrative claims are paid as part of the ongoing nature of the business.

The business simply cannot function if it must work on credit and delay payment for every matter (pending authorization of the Court to pay the bill) or if everything has to be paid on a cash basis. (See § 364(a) concerning incurring unsecured debt without court approval).

There are no reported opinions concerning immediate payment of business expenses, but *Collier* states, "While the courts deal gingerly with the payment of professionals, there is a virtually unstated assumption that 'ordinary course of business' administrative expenses (such as current post petition wages and trade debt) will be paid when due. The courts have not dealt with the question of whether these funds must be refunded if, later, there remains insufficient money for other administrative expenses." *3 Collier on Bankruptcy*, 15th Ed., ¶ 503.01.

■ The Code also deals differently with fees of professionals than with payment of other people who provide services to the debtor. Employees do not need court permission to be paid and are usually paid as part of the ongoing operation of the business. If a water pipe breaks, a plumber will be called and will be employed without order of the court and will be paid without further scrutiny. It is only those who deal with the actual reorganization of the debtor (rather than the ongoing business of the debtor) who are required to be employed under § 327 and whose applications for payment must be approved by the Court. It is only these professionals who cannot seek payment more often than once every 120 days unless the Court otherwise orders. It is clearly the intent of Congress that professionals involved in the reorganization effort itself be carefully scrutinized, that their dealings be open to the public, that they maintain the distance from the debtor that is not possible for an employee, and that they not drain the debtor of the capital that it needs to fund its reorganization.

Whether Congress intended it or not, the fact that attorneys for the debtor-in-possession will not be paid on a regular basis keeps the attorney alert to the ongoing reorganization chances of the debtor. It does the attorney no good to build up a massive Chapter 11 administrative claim, which will then be subordinated in a later Chapter 7. It is important to the attorney that he give his client sound advice about when to convert the case or how to proceed so that the reorganization is made more feasible.

■ In a way this creates a conflict between the attorney and his client, as their interests are not absolutely identical. However, the debtor-in-possession is a fiduciary to the estate. Because the attorney becomes an ongoing creditor of the estate, it is in the attorney's best interest to assist the debtor-in-possession in fully carrying out its fiduciary duties. The duties of a debtor to itself and those of a debtor-in-possession to the estate may not be identical. The Bankruptcy Code has given the attorney an incentive to care more about the relationship of the debtor-in-possession to the estate than the gains that the debtor may have through delaying reorganization or acting in a self-serving manner.

The proposal put forth by Mr. Tilem would interfere with this relationship. He states that a reason for seeking the sequestration provision is because attorneys cannot trust their clients to be open with them, to run the business in the best possible manner, or even to be honest. Unfortunately, this is a true statement in too many cases. However, it is not appropriate to protect the attorney (who clearly can choose his client) and not the other creditors who may have had no such informed option. Removing the incentive of the attorney to carefully oversee the dealings of his client is not a benefit to the estate nor to the bankruptcy system as a whole.

*Trusting the Debtor-in-Possession.* The real issue that is being presented to the Court is that of trust. The debtor-in-possession provisions of the Bankruptcy Code envision a trustworthy, carefully run business or individual who is responsible as a fiduciary and will use his/its best efforts to reorganize itself. Through the system of creditors' committees and the United States Trustee, each debtor-in-possession will be

carefully monitored and motions to convert or to dismiss as to those who abuse the system or cannot reorganize will be promptly heard by the Court. There will be a group of competitively paid, highly qualified professionals who will assist the debtor-in-possession in reorganizing itself and in constantly analyzing its position.

Unfortunately fact does not match the hopes of Congress. During the 12 months ending June 30, 1987, 1,917 Chapter 11 petitions were filed in the Central District of California. There were 12 judges available to handle these cases; and there were approximately 7 attorneys and 7 analysts in the United States Trustee's office. Besides these 1,917 Chapter 11 cases, there were 36,657 Chapter 7 cases, 2 Chapter 12 cases, and 10,705 Chapter 13 cases filed in that same period. *Annual Report of the Director of the Administrative Office of the United States Courts, 1987.* This overwhelming volume of cases virtually assures that the contemplated monitoring will not occur.

The practicality of the situation is that the vast majority of debtors do not successfully reorganize and that many administrative claimants are paid nothing while the attorneys are limited to the retainer that they obtained before the case was filed.

Implementing the system proposed by Mr. Tilem will not make debtors more trustworthy nor attorneys more diligent. In fact it will tend to lull the attorneys into a sense of false security and will harm the entire estate.

The answer to the issue of whether the debtor-in-possession can be trusted is not to assure that some of the professionals are guaranteed payment of their fees, but to more carefully monitor each case and encourage conversion or dismissal without delay when it becomes apparent that reorganization is no longer feasible or that wrongdoing is taking place.

*Is this discriminatory treatment of the bankruptcy bar?* One of the issues that is often raised by counsel (and was brought up here) is whether something less than full payment at the time that services are incurred is a discriminatory treatment of the bankruptcy bar and therefore violates the intent of Congress as stated in § 330(a)(1) that professionals be compensated in part based upon the cost of comparable services other than in a bankruptcy case. Usually this argument involves a comparison of the billing practices to a private client for a single case, rather than for handling a case "in rem" and a series of ongoing legal services.

There is no other practice of law which is identical in nature to bankruptcy practice, but the Court believes that probate practice has some of the same elements. The attorney is dealing with a fiduciary, who he must advise. The decisions made by the Court may affect creditors who are not even yet known. There is a limited "res" that will be dealt with and distributed. The attorney spends much of his time in dealing with ongoing operations rather than in Court. In both situations it is the Court, rather than the client, which ultimately decides the fee of the attorney. However, in probate cases that fee is specifically limited by statute, unless the Court finds extraordinary services.

Probate practice in the Los Angeles area is controlled by the Los Angeles Probate Memorandum. Section 15.01 states that there is no authority for payment of fees in advance of a court order authorizing them, and that if such payment occurs, the attorney will be surcharged 10% interest from the date of payment to the date of the order authorizing payment. This surcharge provision can be waived if there is written consent of the residuary beneficiaries, the amounts paid are reasonable and proper, and a showing is made that it is to the benefit of the estate to have allowed these payments to have occurred.

■ Although bankruptcy practice is not totally analogous to probate practice, it does seem that the court can use the Probate Policy Memorandum as at least one indication of what is comparable practice of law in the community. Therefore the Court does not find a discrimination against bankruptcy attorneys by failure to allow them to collect their fees on a monthly basis.

*There are legal restrictions on the proposed plan.* Although Mr. Tilem argues that his proposal is merely a contravention of custom and not of law, this Court believes that he has not accurately interpreted the provisions of the Bankruptcy Code. Section 503 states that an entity may file a request for payment of an administrative expense. Therefore, all administrative expenses (whether they be attorneys' fees or not) can only be paid after review by the Court. Section 503(b)(2) states that administrative expenses are allowed after notice and a hearing, and that the type of expenses that require notice and a hearing are "compensation and reimbursement awarded under § 330(a) of this Title." Section 330(a) determines that the Court may award an employed professional person reasonable compensation only after notice and a hearing. In putting these two provisions together, the Court can make an "award" of fees after notice and a hearing, but must have a separate notice and hearing to allow payment of those fees as an administrative expense. In the case of interim fees, the attorney may apply to the Court not more often than once every 120 days for this compensation. But it is only after notice and a hearing that the Court may allow and disburse such compensation to the applicant. Section 331.

Mr. Tilem argues that putting the money in his trust account is not payment to him. He then changes his position and states that the Code does not prevent payment. In fact the Code uses the word "payment" in § 503 and "disburse" in § 331.

Although this language is not definitive and it can be argued that the placing of money in a client trust account is neither "payment" nor "disbursement" because the attorney does not have use of the money, it was clearly the intent of these provisions that the debtor have control of the money during a reorganization until the Court orders otherwise. This is not mere custom, but is law.

On the basis of the above, the application is denied.