In re Jeffrey S. ANOLIK, Debtor.

Bankruptcy No. 86–40574–HJB.

United States Bankruptcy Court,
D. Massachusetts.

March 31, 1997.

Katherine R. Downing, Esq., U.S. Trustee.

Wayne M. Greenwald, New York City, for Anoliks.

Mary Cummings, for Massachusetts Department of Revenue.

Richard Howland, Amherst, MA.

Gregory Schubert, Springfield, MA.

Meyers Brothers & Adeletti, P.C., Longmeadows, MA.

## MEMORANDUM OF DECISION

HENRY J. BOROFF, Bankruptcy Judge.

Before the Court is a "Motion to Approve Final Accounting and Authorize Disbursements" (the "Motion") filed by Peter M. Stern, the Chapter 7 Trustee in Bankruptcy (the "Trustee"). The Motion seeks approval of the "Trustee's Final Report and Account Before Distribution, Request for Compensation and Report on Claims/Proposed Distribution" (the "Final Account"). The Final Account includes a request for payment of the Trustee's Chapter 7 commissions claimed to be due under 11 U.S.C. § 326(a), as well as reimbursement for the Trustee's out of pocket expenses.

The Trustee also serves as his own counsel in the case. Various professionals, including the Trustee, were awarded interim compensation during the course of the Chapter 7 administration. However, at what may now be the case's closure, there appear to be insufficient funds to fully pay Chapter 7 administrative expense claims filed by the Internal Revenue Service (the "IRS") and the Massachusetts Department of Revenue (the "DOR"). Thus, one of the issues to be resolved is whether the Trustee and the other professionals employed in the Chapter 7 and 11 case must, as a matter of law, disgorge some or all of their previously awarded compensation so that those funds, together with any money remaining in the estate, may be utilized to achieve a pro rata distribution to all Chapter 7 administrative claimants, pursuant to 11 U.S.C. § 726(b).

## I. *Facts*

Jeffrey S. Anolik ("the Debtor") filed a petition in this Court under Chapter 11 of the Bankruptcy Code on October 29, 1986. On January 12, 1987, the Trustee was appointed as the Chapter 11 trustee, and his motion to serve as his own counsel was allowed by this court (Queenan, J.) on February 27, 1987. On June 5, 1987, the Trustee moved to have the case converted to Chapter 7, and the case was so converted on June 30, 1987.

From November 24, 1987 through August 15, 1994, the Trustee liquidated property of the estate, receiving a total of $236,569.19. During that same period, he also disbursed a total of $203,789.92. Those disbursements included the following payments made on court approved interim allowances: (i) $6,972.00 paid to the Trustee in April 1988 for services as Trustee and counsel to the Trustee; (ii) an additional $21,911.15 paid to the Trustee in September 1991, for services as counsel to the Trustee and for reimbursement of expenses; (iii) $4,500.00 paid to attorney Gregory Schubert in June 1989 for services as special counsel to the Trustee; (iv) $22,763.50 paid to attorney Richard Howland in December 1991, also for services as special counsel to the Trustee; and (v) $1,400.00 paid to Meyers Brothers & Adeletti, P.C. in April 1992 for services as accountants to the Trustee.

The Final Account, filed with the Court on September 13, 1994, reported that the balanace on hand, as of August 15, 1994, was $32,779.27. However, on October 19, 1994, the Trustee withdrew the Final Account, noting that he had neglected to submit it first to the Office of the United States Trustee (the "UST") for its review.

On March 12, 1996, the Trustee filed the instant Motion in this Court, and attached to the Motion a copy of the previously filed Final Account without amendment. After no timely objections were filed, the Motion was allowed by the court (Queenan, J.) on March 27, 1996. However, on April 4, 1996, the UST filed a motion to reconsider the March 27, 1996 order. The UST noted, inter alia, that (i) the Trustee had filed the Motion after unsuccessful attempts to obtain UST approval; (ii) the Trustee had agreed to file objections to the claims of certain taxing authorities, but had failed to do so; (iii) the Trustee had failed to properly serve the Motion on the taxing authorities and the Debtor; and (iv) the Final Account did "not provide for payment of [significant capital gains tax claims incurred by the estate] at the same rate as the professional fees sought by the [T]rustee, counsel to the [T]rustee, and special counsel to the [T]rustee, all of whom [would be] paid in full, while only a fraction of the taxes [would] be paid." On April 5, 1996, the court (Queenan, J.) granted the UST's motion for reconsideration and vacated the March 27, 1996 order. The case was soon thereafter reassigned to this judge, whose caseload includes the county where venue is proper for this case.

Prior to the hearing on the Motion, the Debtor and his sister, creditor Wendy Anolik, (the "Anoliks") also filed an objection to the Trustee's motion, raising several questions about the Trustee's actions as Chapter 7 trustee. The allegations in the Anoliks' pleading included contentions that (i) the Trustee engaged in "questionable" transactions in his capacity as Trustee which "deserve[d] investigation," and (ii) the Final Account "fail[ed] to disclose certain conflicts held by the Trustee (such as the Trustee's relationship with a purchaser of property of the Debtor's estate)." The DOR also filed an objection, which it amended on June 12, 1996. The DOR's objection is confusing, and perhaps for good reason. The DOR maintains that it holds various claims, including one in the amount of $4,690 representing 1987 and 1988 income taxes incurred by the estate. However, on April 1, 1996 (after allowance of the Final Account, but before the order granting reconsideration), the Trustee sent a check to the DOR in the amount of $5,317.62, allegedly representing a 44.23% dividend on a DOR claim in the amount of $12,022.64. The DOR concedes that the payment received from the Trustee exceeds its Chapter 7 administrative claim, but complains that it cannot identify the claim which the Trustee believed he was paying. Therefore, the DOR is having some difficulty figuring out what to do with the payment.

At the hearing on the instant Motion, counsel for the Anoliks expounded upon the concerns raised in their objection. Specifically, they claimed that (i) discrepancies existed between the proceeds achieved from the sale of certain properties and the amounts reported; (ii) the Trustee misled Judge Queenan as to his relationship with an individual against whom the estate had a claim and which claim was compromised with court authority;[1] (iii) the Trustee failed to pursue certain estate rights and failed to file any notices of intended abandonment; and (iv) the Trustee failed to properly investigate facts which would have reduced the capital gains tax now unpaid to federal and state taxing authorities. Counsel for the UST repeated her concern that the tax claims were not being paid at the same percentage as the Chapter 7 professional fees. She argued that approval of the Final Account would violate the distribution scheme of the Bankruptcy Code. Counsel for the DOR noted again that the agency was not sure which of DOR's multiple claims the payment it received was intended to satisfy.

1. However, the Debtor appealed Judge Queenan's 1988 order granting the Trustee leave to compromise the claim, and that order was affirmed by the District Court. *See In re Anolik*, 107 B.R. 426 (D.Mass.1989).

In response, the Trustee explained that, of the money remaining in the estate, he had disbursed approximately $26,000 to the IRS, $5,600 to the DOR, and $3,000 to himself, but was willing to pro rate that $3,000 between himself and the two taxing authorities. Although the Trustee conceded that he had not filed notices of intended abandonment with respect to assets not pursued by the estate, he contended that the abandoned assets had no value. Further, the Trustee complained bitterly that the Debtor (who had allegedly spent some time during the course of the estate administration imprisoned on a conviction of arson) had provided no information which would have reduced the capital gains tax, had been uncooperative, had harassed the Trustee, and had obstructed the Trustee's administration of the estate. In response to the UST's argument calling for disgorgement of administrative compensation to achieve a pro rata distribution, the Trustee, invoking the "law of the case doctrine," argued that the interim fee awards "were approved by the Court . . . and . . . shouldn't be disrupted."

At the conclusion of the hearing, the Court denied the Motion to approve the Final Account. However, on the following day, the Court vacated its order *sua sponte* and took the matter under advisement to more carefully consider the UST's arguments on disgorgement.

**2.** Those taxes described in § 507(a)(8) (numbered § 507(a)(7) as of case commencement) are excluded. No such tax is involved here.

**3.** It is well-established that capital gains taxes incurred by a Chapter 7 trustee in liquidating an estate are administrative expenses under § 503(b)(1)(B)(i). *See United States v. Federal Deposit Ins. Corp.*, 899 F.Supp. 50, 56–57 (D.R.I. 1995); *In re Duby*, 98 B.R. 126, 128 (Bankr. D.R.I.1989); *In re Lumara Foods of America, Inc.*, 50 B.R. 809, 816 (Bankr.N.D.Ohio 1985); *In re Lambdin*, 33 B.R. 11, 12 (Bankr.M.D.Tenn. 1983); *see also* S.Rep. No. 989, 95th Cong., 2nd Sess. 66 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5852 ("In general, administrative expenses include taxes which the trustee incurs in administering the debtor's estate, including taxes on capital gains from sales of property by the trustee. . . .").

**4.** Pro rata distribution is subject to the exception that when a case is converted from Chapters 11,

## II. *Analysis*

The order of distribution of the property of an estate liquidated under Chapter 7 is governed by 11 U.S.C. § 726(a), which provides that the property should be disbursed first to pay "claims of the kind specified in, and in the order specified in, section 507 . . . ." Section 507(a) organizes various types of claims into separate priorities. The first priority is shared by certain fees and costs due to the federal courts and the U.S. Trustee, pursuant to chapter 123 of title 28, as well as "administrative expenses allowed under section 503(b) . . . ." 11 U.S.C. § 507(a)(1). Administrative expenses include, inter alia, (1) any tax "incurred by the estate,"[2] (2) any "fine, penalty, or reduction in credit" relating to such a tax, and (3) compensation and reimbursement awarded to professionals under 11 U.S.C. § 330(a). 11 U.S.C. § 503(b)(1)(B)(i), (b)(1)(C), (b)(2).

Thus, the Chapter 7 professionals' claims for fees, together with the claims for postpetition taxes by the IRS and the DOR are all § 503(b) claims,[3] and accordingly, fall into the first priority for distribution under §§ 507(a) and 726(a). The Bankruptcy Code provides that equal priority § 507 claims are entitled to pro rata payment if payment in full cannot be made. 11 U.S.C. § 726(b).[4]

Interim compensation awards under 11 U.S.C. § 331 are interlocutory and are subject to disgorgement.[5] The Trustee's ar-

12, or 13 to Chapter 7, the Chapter 7 administrative expenses have priority over the other administrative expenses. *See* § 726(b).

**5.** *See In re Kaiser Steel Corp.*, 74 B.R. 885, 891 (Bankr.D.Colo.1987) ("Certainly, it is clear that if some administrative expenses are paid on an interim basis and it is ultimately determined that there will be insufficient funds to similarly pay all other administrative claims, those who have received interim payments may be required to disgorge funds so that all administrative claims share pro rata."); *see also In re Evangeline Ref. Co.*, 890 F.2d 1312, 1321 (5th Cir.1989); *In re Taxman Clothing Corp.*, 134 B.R. 286, 291 (Bankr.N.D.Ill.1991); *In re Gherman*, 114 B.R. 305, 307 (Bankr.S.D.Fla.1990); *In re Barron*, 73 B.R. 812, 815 (Bankr.S.D.Cal.1987); *In re Wabash Valley Power Ass'n, Inc.*, 69 B.R. 471, 475 (S.D.Ind.1987); *In re Energy Coop., Inc.*, 55 B.R. 957, 965 (Bankr.N.D.Ill.1985); *In re Am. Int'l Airways, Inc.*, 47 B.R. 716, 722 (Bankr.E.D.Pa. 1985).

gument that the interim fee allowances are the "law of the case" is meritless. Under the law of the case doctrine, "a court should not reconsider a prior ruling unless the following exceptional circumstances exist: (1) evidence on a subsequent trial was substantially different; (2) controlling authority has since made a contrary decision of law applicable to such issues; or (3) the decision was clearly erroneous and would work a manifest injustice." *150 North Street Assocs. Ltd. Partnership v. City of Pittsfield (In re 150 North Street Assocs. Ltd. Partnership)*, 184 B.R. 1, 6 (Bankr.D.Mass.1995). However, in the case of *In re Evangeline Ref. Co.*, 890 F.2d at 1322, the Fifth Circuit stated:

> [F]or the law of the case doctrine to apply, "only a 'final ruling' will do...." 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4478 (1981 & Supp.1989). Finality in this sense does not refer to technical concepts of finality but rather is a functional finality which "seeks to identify a determination intended to put a matter to rest." *Id.* Interim fee awards are not final determinations intended to put a matter to rest. Rather, they are interlocutory and reviewable, and are intended only to provide some interim relief from the economic hardships of subsidizing litigation.

*See also In re Firstmark Corp.*, 46 F.3d 653, 657–59 (7th Cir.1995); *In re Kendavis Indus. Int'l*, 91 B.R. 742, 746–47 (Bankr.N.D.Tex. 1988); *In re Kearing*, 170 B.R. 1, 5 (Bankr. D.D.C.1994). Accordingly, the prior interim fee awards are subject to review.

Nevertheless, courts have reached different results when determining whether the disgorgement of prior interim fee awards, otherwise finally allowable, is mandatory in administratively insolvent cases. In the case of *In re Boston Shipyard Corp.*, 1993 WL 370629, at *3 (D.Mass. Sept. 14, 1993), Judge Zobel of this District noted:

> The Code does not expressly mandate disgorgement whenever assets are insufficient to reimburse all administrative claims, and most courts addressing the issue have discussed the appropriateness of granting such relief in discretionary terms. *See, e.g., Taxman*, 134 B.R. at 291;

*Kaiser Steel*, 74 B.R. at 891; *but cf. Energy Coop.*, 55 B.R. at 965 (court has duty to require disgorgement where there is a shortfall). The overwhelming weight of authority, however, suggests that a court must, at least, consider the issue; where insufficient assets dictate pro rata distribution among a class of creditors, the court must revisit the propriety of any interim awards in light of the final schedule of priorities and the principle that claimants of one class are entitled to be reimbursed on an equal basis.

However, in two cases with facts similar to those before the Court, i.e., where taxing authorities had not received their pro rata shares of the money distributed to administrative claimants, the United States Bankruptcy Courts for the Districts of South Dakota and Montana reached different results. In the case of *In re Swann*, 149 B.R. 137, 139–40 & n. 1, 146 (Bankr.D.S.D.1993), while the fees and expenses owed to the Chapter 7 trustee were paid in full and those owed to counsel to the trustee was paid in part, an administrative expense claim of the IRS was not paid at all, and there were not sufficient funds remaining to make a distribution to the IRS. The court simply concluded that "the [IRS] tax claim [would] remain unsatisfied." *Id.* at 146. However, when presented with similar facts, the U.S. Bankruptcy Court for the District of Montana required the Chapter 7 trustee to disgorge previously paid fees in order to effect a pro rata distribution between the trustee, the IRS, and the state taxing authority. *In re Goffena*, 175 B.R. 386, 392 (Bankr.D.Mont.1994). Neither court directly addressed the issue of whether disgorgement was *required* in this situation, or whether it was left to the discretion of the court, although the language of *Goffena* certainly suggests the former while that of *Swann* implies the latter.

Some courts have dealt with the thorny issue of disgorgment in a slightly different, but relevant, context—whether professionals who were paid compensation during the Chapter 11 phase of a bankruptcy case, later converted to Chapter 7, should be required to disgorge those fees so that Chapter 7 administrative expenses could be paid pro

rata.[6] In this context, Chapter 11 professionals have sometimes been required to disgorge previously awarded fees. *See Shaia v. Durrette, Irvin, Lemons & Bradshaw, P.C. (In re Metropolitan Elec. Supply Corp.),* 185 B.R. 505, 508–11 (Bankr.E.D.Va.1995); *In re The Lighting Ctr.,* 178 B.R. 320 (Bankr. D.R.I.1995); *In re Lochmiller Indus., Inc.,* 178 B.R. 241, 253–54 (Bankr.S.D.Cal.1995); *Kearing,* 170 B.R. at 7–8 (holding that disgorgement by debtor's counsel was appropriate if there was an administrative deficiency and debtor's counsel had received more than its pro rata share of any distribution to Chapter 11 administrative claimants); *see also Matz v. Hoseman,* 197 B.R. 635, 639 (N.D.Ill.1996) (Bankruptcy court had authority to order disgorgement of fees by Chapter 11 professionals); *United States Trustee v. Johnston,* 189 B.R. 676, 677–78 (N.D.Miss. 1995) (same).

However, in *In re Vernon Sand & Gravel, Inc.,* 109 B.R. 255, 259 (Bankr.N.D.Ohio 1989), the court did not require the attorney for a Chapter 11 debtor to disgorge previously paid fees, although it fully recognized its authority to do so.[7] And in the case of *In re North Bay Tractor, Inc.,* 191 B.R. 186, 188 (Bankr.N.D.Cal.1996), the court declined to order disgorgement of a prepetition retainer held by counsel to a Chapter 11 debtor in an administratively insolvent estate, notwithstanding acknowledgment of the retainer's status as property of the estate. *See Indian Motocycle Assoc. v. Mass. Hous. Fin. Agency,* 66 F.3d 1246, 1255 (1st Cir.1995). That court worried that disgorgement "would undermine the purpose of retainers and chill the willingness of many professionals to undertake representation of Chapter 11 debt- ors." *North Bay Tractor, Inc.,* 191 B.R. at 188.

■ This Court agrees with the *Boston Shipyard, Vernon,* and *North Bay Tractor* courts, and holds that ordering disgorgement of interim fees in either a Chapter 7 or 11 case is a discretionary matter. Disgorgement is a harsh remedy, one that should be applied only when mandated by the equities of a case.

■ The court's discretion to determine the propriety of disgorgement of previously paid administrative claims must be applied on a case by case basis. Factors to be considered by the court should include, whether the party facing disgorgement had a reasonable expectation that the payment received was final, and whether any party who would suffer from nondisgorgement has objected to the trustee's proposed final distribution. *See Vernon Sand & Gravel, Inc.,* 109 B.R. at 259 (court stated that "most important[ ]" factor in its decision to not order disgorgement was that the only party which would benefit from disgorgement did not request it). Also, where a professional has reason to believe that its goal is unachievable but nevertheless continues to unreasonably amass fees, disgorgement of fees for such services seems appropriate. *See id.* at 258–59; *In re Pacific Forest Indus., Inc.,* 95 B.R. 740, 743 (Bankr.C.D.Cal.1989).[8]

Further, this Court is somewhat troubled by a double standard prevalent in administratively insolvent cases. A literal application of § 726(b) would mandate disgorgement by *all* who had asserted claims and received payments in an administratively insolvent case. However, the Court is aware of only

---

**6.** Although this case itself was converted from Chapter 11 to Chapter 7, the amount of fees attributable to pre-conversion services is unclear.

**7.** In the *Vernon* case, the court listed four factors which influenced its decision: (1) a refund of fees was not requested by any interested parties; (2) "requiring a refund of fees would be of little benefit to the estate compared to the administrative burden it would create"; (3) the attorney was not being paid in full, as the court also denied his third and fourth fee applications in the opinion; and (4) some of the fees in the attorney's fourth fee application fell under the Chapter 7 phase of the case, so the amount that

he was entitled to but would not receive for that work offset, at least to some extent, the Chapter 11 fees he was being allowed to retain. *Id.*

**8.** As the *Pacific Forest Indus., Inc.* court stated:

Whether Congress intended it or not, the fact that attorneys for the debtor-in-possession will not be paid on a regular basis keeps the attorney alert to the ongoing reorganization chances of the debtor. It does the attorney no good to build up a massive Chapter 11 administrative claim, which will then be subordinated in a later Chapter 7.

95 B.R. at 743.

one case where a non-professional was ordered to disgorge payment because of a subsequent administrative insolvency. *See In re Kingston Turf Farms, Inc.*, 176 B.R. 308, 309–10 (Bankr.D.R.I.1995) (requiring non-professional to disgorge; holding that "disgorgement is required as a matter of law, just to adhere to the mandatory payment scheme of the Code").

There is, of course, a rational basis for treating the claims of professionals differently from those of some non-professionals. It is inequitable to order disgorgement of payments made to trade creditors and other similarly situated parties "in the ordinary course of business" of a Chapter 11 case.[9] "The alternative would make it impossible for any prudent business person to voluntarily do business, even on a cash basis, with a chapter 11 debtor." *Manwell*, 62 B.R. at 534. However, the fact that courts have felt free to make this distinction is good evidence of their belief that they have discretion in this area.

■ Where disgorgement by any party is ordered, such disgorgement should not exceed the amount that would be required to achieve a pro rata distribution assuming that all parties subject to disgorgement were ordered to relinquish funds, regardless of whether the court actually so ordered. A claimant required to disgorge should not suffer disproportionately simply because the court equitably waived disgorgement for another administrative claimant.[10] Court authorized professionals are not second-class service providers, nor does their function include the disproportionate subsidization of bankruptcy cases.

■ In the case at bar, consideration of the foregoing factors is premature. The Final Account is defective for several other reasons. First, it is clear that the payment made by the Trustee to the DOR is "botched" in some fashion, and the proposed corrected payment will impact the amounts paid to other holders of administrative claims. Second, the request for payment of commissions made by the Trustee is wholly out of compliance with Local Rule 34. To reference only one manner in which the Final Account violates Local Rule 34, it does not distinguish those commissions or fees sought to be approved as Chapter 11 administrative expenses from those sought to be approved as Chapter 7 administrative expenses. Local Rule 34(C)(4). Third, the Final Account fails to submit for "final" allowance all of the fees awarded by the court on an "interim" basis.[11]

---

9. *See In re Achievement Center, Inc.*, 1996 WL 334422, at *3 n. 2 (Bankr.D.N.H. June 12, 1996) ("trade debt normally is paid as it is incurred, i.e., at 100 percent of the claim, and disgorgement will rarely if ever be ordered ... in the event that subsequently it develops that chapter 11 professionals themselves cannot be paid at 100 percent of their claims"); *In re Pacific Forest Indus., Inc.*, 95 B.R. 740, 743 (Bankr.C.D.Cal. 1989); *Turmail v. Yankee Motor Freight (In re Manwell)*, 62 B.R. 533, 534 (Bankr.N.D.Ind. 1986); *see also* 4 COLLIER ON BANKRUPTCY § 503.03[6], at 503–13 to 503–15 (15th ed. rev. 1996). *But see Kingston Turf Farms*, 176 B.R. at 309–10.

10. In *Lochmiller*, the court rejected the argument of the former counsel for the debtor-in-possession that the court had to take into account the money paid to *all* Chapter 11 administrative claimants when determining how much he had to disgorge. 178 B.R. at 253–54. After ruling that payments made in the "ordinary course of business" during a Chapter 11 case were not subject to disgorgement, 178 B.R. at 247–250, the court reasoned:

> If, as established above, recovery may not be had of those claimants paid in the ordinary course then a pro rata disgorgement, based on all amounts paid in the Chapter 11 case, would not suffice to pay the Chapter 7 administrative claimants in full. The result is that one group of administrative claimants, Chapter 7 or Chapter 11, must bear the risk of nonpayment. In light of the clear priority afforded the Chapter 7 administrative claims under Code section 726(b), this Court must conclude that it is the Chapter 11 claimants which must bear the risk. The recovery to be had from the Chapter 11 Professionals will thus not be limited to a pro rata share of the entire amount paid out in the Chapter 11 case.

> *Id.* at 253–54; *see also Kearing*, 170 B.R. at 3, 8. This Court disagrees. To require Chapter 11 professionals to pay for more than their pro rata share is inherently inequitable.

11. In this Circuit, the standard by which requests for compensation are reviewed is the "lodestar" analysis. *Boston and Maine Corp. v. Moore*, 776 F.2d 2 (1st Cir.1985); *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 950 (1st Cir.1984); *In re 1095 Commonwealth Ave. Corp.*, 204 B.R. 284, 290 (Bankr.D.Mass.1997); *In re Smuggler's Beach Properties, Inc.*, 149 B.R. 740, 743 (Bankr. D.Mass.1993); *In re Bank of New England Corp.*,

Finally, this Court cannot properly evaluate the fee applications of the Trustee for commissions and legal services without dealing in an appropriate fashion with the allegations made by the Anoliks. Granted, the Anoliks' allegations have been made very late in the process, may be frivolous, and may be duplicative of complaints made earlier in the case, but they are relevant to the fee applications and must be heard. The Anoliks must be given an opportunity to present their arguments and demonstrate to the Court whether they have any merit.

### III. *Conclusion*

The Trustee's Final Account is defective as a matter of form and substance and, therefore, the Motion is denied. The Trustee shall file an amended final account no later than May 30, 1997. The Court will rule on the interim fee applications filed by the other professionals as if they were final fee applications, unless the professionals submit amended or supplemental fee applications by May 30, 1997. The hearing on the amended final account and allowance of compensation shall be set for September 17, 1997, with the deadline for any objections to the said motions, including requests for disgorgement, set for September 5, 1997. Motions by any party in interest seeking to compel the production of documents or testimony from the Trustee shall be filed on or before July 1, 1997.

134 B.R. 450, 453 (Bankr.D.Mass.1991); *In re First Software Corp.,* 79 B.R. 108, 112–13 (Bankr. D.Mass.1987); *In re WHET, Inc.,* 58 B.R. 278 (Bankr.D.Mass.1986).

> [T]he fee-setting court first establishes a "threshold point of reference" or the "lodestar," which is the number of hours reasonably spent by each attorney multiplied by his reasonable hourly rate.... This lodestar can then be adjusted up or down to reflect a variety of factors, such as delay in payment, quality of representation, and the results obtained, if they have not already been taken into account in computing the lodestar.

*Boston and Maine Corp.,* 776 F.2d at 7 (citation omitted).

Further, in determining a reasonable fee, the court should apply various factors, including (1) the time and labor required; (2) the novelty and difficulty of the questions presented by the case; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time pressures imposed by the client or the circumstances; (8) the amount involved and results obtained as a result of the attorney's services; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Smuggler's Beach Properties, Inc.,* 149 B.R. at 743.