_|GONZALES, J.
Three guaranty associations appeal from a trial court judgment, dissolving an insolvent insurance company. As holders of priority claims against the insurer’s estate, the associations contend the trial court erred in approving the Liquidator’s final plan for distribution of the insurer’s assets, wherein the associations were designated to receive only a proportionate amount of their claims.
FACTS AND PROCEDURAL HISTORY
On October 20, 1964, First Columbia Life Insurance Company (First Columbia) was incorporated in the State of Louisiana as a life, accident, and health insurance company. First Columbia was issued a certificate of authority to underwrite insurance policies on April 1, 1966, and subsequently transacted business in Louisiana and several other states, including Nebraska, Oklahoma, and Texas. On September 26, 1988, the district court ordered First Columbia into rehabilitation, and on November 18, 1988, into receivership, under the direction and control of the Commissioner of Insurance, State of Louisiana. Robert A. Bourgeois was appointed Interim Liquidator of First Columbia (Liquidator) in October of 1995, and he served in *792 this capacity until First Columbia was dissolved.[1]
Pursuant to La. R.S. 22:743,[2] the Liquidator contracted with several professionals (the assistants) to assist in First Columbia’s liquidation. According to assertions made in the parties’ briefs, during the course of the liquidation, the district court approved approximately $800,000.00 in interim distributions from First Columbia’s estate to the assistants as fees and to the Liquidator for administrative expenses of the liquidation.
On January 6, 1997, the Liquidator filed a petition for payment of claims and for dissolution of First Columbia, Attached to the petition was a final plan of distribution and dissolution in which the Liquidator proposed to withhold an additional $17,000.00 for the payment of fees of the assistants with whom he had contracted and for his administrative [^expenses. The final plan of distribution also proposed to pay various guaranty associations, including the appellants herein, a pro-rata distribution of 45.93% of their fees and expenses, because there were insufficient funds left in the estate to satisfy these claims in full.
On January 21, 1997, Nebraska Life and Health Insurance Guaranty Association, Oklahoma Life and Health Insurance Guaranty Association, and Texas Life, Accident, Health and Hospital Service Insurance Guaranty Association (Guaranty Associations) filed a response to the Liquidator’s petition, a reconventional demand against the Liquidator, and a third party demand against the Commissioner of Insurance, demanding an accounting and reimbursement of excess payments. According to the Guaranty Associations, they were each holders of claims against the estate of First Columbia, and under the proposed final distribution, would receive less than they were entitled to under the Louisiana Insurance Code, specifically La. R.S. 22:746. The Guaranty Associations contended that the interim payments made by the Liquidator during the course of the liquidation ranked in the same level of priority as the Guaranty Associations’ claims, but that these interim payments had reduced the funds finally available for payment of the Guaranty Associations’ claims, in effect giving an illegal preference for the payment of fees to appointed assistants and the Liquidator’s administrative expenses over the Guaranty Associations’ expenses, which were entitled to identical priority.
The district court held a hearing on January 28,1997, to address the Guaranty Associations’ objection to the Liquidator’s proposed final distribution. At the conclusion of the hearing, the trial court indicated its intent to approve the dissolution plan, and on the same day, signed a judgment, ordering First Columbia dissolved and releasing the Liquidator from his obligations and duties.[3]
[iThe Guaranty Associations appealed from the judgment, asserting that the trial court erred in failing to enforce the statutory priority distribution scheme contained in La. R.S. 22:746, which requires equalized payments of administrative expenses among equally ranking creditors in a receivership.[4]
*793 PRIORITY OF CLAIMS IN THE DISTRIBUTION OF ASSETS OF AN INSOLVENT INSURER
The statutory scheme governing the administration of insurance insolvencies is set forth in La. R.S. 22:731 et seq. of the Louisiana Insurance Code; entitled “Rehabilitation, Liquidation, Conservation, Dissolution, and Administrative Supervision.” For those claiming entitlement to a portion of the estate of an insolvent insurer, the statutory scheme establishes a priority system by which claims are to be paid. These priorities are set forth in La. R.S. 22:746 as follows:
The priorities of distribution of general assets from the insurer’s estate shall be as follows:
(1) The commissioner’s costs and expenses of administration and the claims handling expenses of the Insurance Guaranty Association, the Louisiana Life and Health Insurance Guaranty Association, and any similar organization in another state, as provided for in R.S. 22:1385(B) and 1395.13(D)(2).
(2) Claims by policyholders, beneficiaries, and insureds arising from and within the coverage of and not in excess of the applicable limits of insurance policies and insurance contracts issued by the insurer; and liability claims against insureds which claims are within the coverage of and not in excess of the applicable limits of insurance policies and insurance contracts issued by the insurer; and claims of the Insurance Guaranty Association, the Louisiana Life and Health Insurance Guaranty Association, and any similar organization in another state, as provided for in R.S. 22:1385(B), 1379(3), . 1395.3, and 1395.13(D)(2).
(3) Claims of the federal government other than those claims in Paragraph (2) of this Section.
(4) Compensation actually owing to employees other than officers of an insurer, for services rendered within three months prior to the commencement of a proceeding against the insurer under this Part, but not exceeding two thousand five hundred dollars for such employee, shall be paid prior to the payment of any other debt or claim and in the discretion of the commissioner of insurance may be. paid as soon as practicable after the proceeding has commenced; except, that at all times the commissioner of insurance shall reserve such funds as will in his opinion.be sufficient for the payment of all claims in Paragraphs (1), (2), and (3). This priority shall be in lieu of any other similar priority which may be authorized by law as to wages or compensation of such employees.
b(5) Claims under nonassessable policies for unearned premiums or other premium refunds and claims of general creditors, including claims of ceding and assuming companies in their capacity as such.
(6) All other claims. (Emphasis added.)
It is undisputed that the claims of the Guaranty Associations at issue constitute “claims handling expenses” as referred to in paragraph one of La. R.S. 22:746, and are known as “Class I” claims, which receive the highest priority when an insolvent insurer’s assets are distributed. The dispute lies in whether the Liquidator’s administrative expenses, including the compensation of appointed assistants, the payment of which is authorized by La. R.S. 22:743, are of an equal priority with the Guaranty Associations’ claims, or if these administrative expenses fall within a different classification which allows them to be paid before the Class I claims described in La. R.S. 22:746(1) are paid.
The Liquidator argues that, under the provisions of La. R.S. 22:743, he is allowed to pay his administrative expenses on an “as-you-go” or interim basis and to then make a distribution with the remaining assets to the claimants of First Columbia in accordance with the priorities set forth in La. R.S. 22:746.[5] According to the Liquidator, the “obvious result” of the statutory scheme is that the Liquidator’s administrative expenses will always be paid in full under La. R.S. 22:743, even though the Guaranty Associations’ claims and the Liquidator’s claims are *794 both Class I claims for distribution purposes under La. R.S. 22:746.
Louisiana Revised Statute 22:743 provides, in pertinent part, as follows:
A. For the purpose of this Part, and in connection with proceedings involving only domestic insurers, the commissioner of insurance shall have the power to appoint one or more special deputies as his agent or agents and to employ such clerks, or assistants as may by him be deemed necessary, and to give each of such persons such powers to assist him as he may consider wise. The compensation of every such special deputy, agent, clerk, or assistant shall be fixed, and all expenses of taking possession of the property of the insurer and the administration thereof shall be approved, by the commissioner of insurance, all subject to the approval of the court, and shall be paid out of the funds or assets of the insurer. (Emphasis added.)
The trial court found that La. R.S. 22:743 and La. R.S. 22:746 were in conflict and approved the Liquidator’s proposed final dissolution plan, indicating its agreement with the Liquidator’s interpretation of the statutes. The Guaranty Associations argue that there is no conflict between La. R.S. 22:743 and La. R.S. 22:746 and that the trial court’s interpretation feof the statutes improperly creates a “super priority,” whereby the Liquidator’s administrative expenses referenced in La. R.S. 22:743 are given undue preference over the Class I claims referenced in La. R.S. 22:746.
INTERPRETATION OF STATUTES
Louisiana Civil Code article 13 provides that “[l]aws on the same subject matter must be interpreted in reference to each other.” In interpreting a statute, courts must construe the provision in question in a manner which harmonizes and reconciles it with other provisions. New Orleans Rosenbush Claims Service, Inc. v. City of New Orleans, 94-2223 (La.4/10/95), 653 So.2d 538, 546. If two statutes can be reconciled by a fair and reasonable interpretation, the court must read the statutes so as to give effect to each. Green v. Louisiana Underwriters Insurance Company, 571 So.2d 610, 616 (La.1990).
Section 743 mandates that the compensation of appointed assistants and the Commissioner’s administrative costs “shall be paid out of the funds or assets of the insurer.” The statute merely identifies the source of the funds for these expenses; it does not indicate that these payments are to be handled differently from any other claims assertable against the insurer’s estate, nor that any priority is created. On the other hand, Section 746 mandates that claims against an insurer’s estate shall be paid in a certain order of priority. The highest priority of claims, or Class I claims, include the “commissioner’s costs and expenses of administration.” La. R.S. 22:746(1). When the statutes are read in pari materia, it is clear that the compensation of appointed assistants and the Commissioner’s administrative expenses referenced in Section 743 merely constitute Section 746 Class I claims, and are no different than any other Section 746 Class I claims. There is no statutory authority for interpreting Section 743 as creating a higher priority for the payment of certain Class I claims.
Therefore, we disagree with the trial court’s approval of First Columbia’s final dissolution plan wherein the Liquidator’s expenses, including the compensation of appointed assistants, were paid in full, and the Guaranty Associations’ claims, also Class I claims, were only paid at 45.93% of the amount claimed.
bANALOGOUS PRINCIPLES OF BANKRUPTCY LAW
Although we conclude that all Class I claims under Section 746 are to be treated equally, this conclusion creates two unanswered issues in this appeal: (1) How should an insolvent insurer’s assets be distributed when there are insufficient funds to fully satisfy all claims falling in the same class? (2) When interim payments have been made during the course of a liquidation to satisfy Class I administrative expenses, what happens when it is finally determined that there are insufficient funds to pay the remaining *795 Class I claims? Because the statutory scheme governing the administration of insurance insolvencies is similar to proceedings in bankruptcy, we look to bankruptcy law for guidance in addressing these issues. See LeBlanc v. Bernard, 554 So.2d 1378, 1382 (La.App. 1st Cir.1989), writ denied, 559 So.2d 1357 (La.1990); see also Green v. Champion Insurance Company, 311 So.2d 249, 256 (La. App. 1st Cir.), writ denied, 580 So.2d 668 (La.1991) (court looked to analogous areas of corporation law and partnership law when addressing its authority to appoint a liquidator under La. R.S. 22:731 et seq.).
Generally, under federal bankruptcy law, a bankruptcy trustee is authorized to employ certain professional persons to represent' or assist him in carrying out his duties in administering a debtor’s estate. 11 U.S.C.A. § 327. A bankruptcy court may award reasonable compensation for services rendered by these professional persons, as well as reimbursement for certain expenses; and any professional person employed under 11 U.S.C.A. § 327 may apply to the court for interim compensation and/or reimbursement of expenses rendered during the course of a bankruptcy. 11 U.S.C.A. §§ 330, 331. However, a bankruptcy court’s authorization to distribute interim compensation to a professional, based on his administrative claim, does not create in that professional a greater priority right based merely on the fact that' the professional has been allowed to receive the compensation. In the Matter of Lockwood Corporation, 216 B.R. 628, 636 (Bankr.D.Nebr.1997).
Compensation and reimbursement awarded to professionals under 11 U.S.C.A. § -330, and the trustee’s expenses in preserving a debtor’s estate, are classified as administrative expenses and fall into the first priority for distribution of the debtor’s estate. 11 U.S.C.A. §§ 503(b)(1)(B)®, (b)(1)(C), (b)(2), 507(a) and 726(a). The Bankruptcy Code provides that feequal priority § 507 claims are entitled to pro rata payment if payment in full cannot be made. 11 U .S.C.A. § 726(b); In re JKJ Chevrolet, Inc., 26 F.3d 481, 484 (4th Cir.1994).
Interim payments under 11 U.S.C.A. .§ 331 are interlocutory and are subject to disgorgement. In the Matter of Evangeline Refining Company, 890 F.2d 1312, 1321 (5th Cir.1989); In re Anolik, 207 B.R. 34, 37 (Bankr.D.Mass.1997); United States Trustee v. Johnston, 189 B.R. 676, 677 (Bankr.N.D.Miss.1995). If some administrative expenses are paid on an interim basis and it is ultimately determined that there will be insufficient funds to similarly pay all other administrative claims, those who have received interim payments may be required to disgorge funds so that all administrative claims share pro rata. In re Kaiser Steel Corporation, 74 B.R. 885, 891 (Bankr.D.Colo.1987). Disgorgement is a discretionary matter. The overwhelming weight of authority, however, suggests that a court must, at least, consider the issue; where insufficient assets dictate pro rata distribution among a class of creditors, the court must revisit the propriety of any interim awards in light of the final schedule of priorities and the principle that claimants of one class are entitled to be reimbursed on an equal basis. In re Anolik, 207 B.R. at 38. Factors to be considered by the court should include whether the party facing disgorgement had a reasonable expectation that the payment received was final, and whether any party who would suffer from nondisgorgement has objected to the trustee’s final proposed distribution. In re Anolik, 207 B.R. at 39. To offset the harshness of disgorgement, some courts, when dealing with interim fees, hold back the-payment of a certain percentage until the ultimate final allowance of fees. See In re Bank of New England Corporation, 134 B.R. 450, 458-459 (Bankr.D.Mass.1991), aff'd., 142 B.R. 584 (D.Mass.1992) and cases cited therein.
Using these principles as guidance in the present case, we conclude that, although Louisiana’s insurance insolvency scheme is silent, the proper method for distributing an insolvent insurer’s assets among Section 746 Class I claimants, when there are insufficient funds to satisfy such claims in full, is the pro rata distribution approach used in bankruptcy courts. See 11 U.S.C.A. § 726(b). The pro rata approach furthers the basic principle that all claims within the same class should be treated equally.
*796 bThe Liquidator argues that utilization of the pro rata approach would require that he “be able to calculate the length of time necessary to liquidate the assets and know exactly what the return on the assets would be at the beginning of the liquidation process”- so that he would not exceed his pro rata share of expenses in the Class I category. According to the Liquidator, he does not have a “crystal ball” which can relay this type of information. However, as pointed out by the Guaranty Associations, the Commissioner of Insurance is statutorily required to assess the cost-effectiveness of any liquidation undertaken by the Department of Insurance under La. R.S. 22:736(F), which reads:
In addition to any other duty under this Section, the commissioner shall estimate, based upon available information, the total amount of expenditures and obligations to be incurred by the Department of Insurance, in connection with any rehabilitation or liquidation under this Section and determine if this (footnote omitted) is the most cost-effective to the department and to any insurance guaranty association established under the provisions of this Title. The commissioner shall periodically update these estimates.
Therefore, we find no merit in the Liquidator’s argument that the pro rata approach to distribution of an insurer’s assets will impose an undue administrative burden upon the Department of Insurance. Further, we note that this approach will not apply when there are sufficient funds in the insolvent insurer’s estate to satisfy the Section 746 Class I claims.
Regarding the practice of making interim payments for the Liquidator’s administrative expenses under Section 743, we note that this is a common practice in state district courts, even though interim payments are not specifically authorized under the insurance insolvency statutes. And although interim payments to professionals assisting in bankruptcy proceedings are statutorily authorized under 11 U.S.C.A. §§ 330, 331, these payments are only authorized after notice to creditors and a hearing, are interlocutory in nature, and may be subject to disgorgement in the event there are insufficient funds to pay other administrative claims of equal rank.
MOTION TO DISMISS
After the appeal was lodged in this case, the Liquidator filed a motion to dismiss the appeal which we now address.
As the basis for his motion to dismiss, the Liquidator argues that the appeal is moot. The Liquidator contends that, because the trial court’s judgment dated January 28, 1997, was devolutively appealed rather than suspensively appealed, the appeal is moot for several ^reasons: (1) First Columbia has been dissolved and no longer exists; (2) the Liquidator has been released from his duties; (3) even if relief could conceivably be fashioned, implementation of the relief would be “pragmatically impossible and inequitable;” and (4) a recent investigation may have revealed the existence of an available asset of First Columbia, which if recovered, would provide a means of completely reimbursing the Guaranty Associations’ expenses at issue in this appeal.
The fact that First Columbia has been dissolved and the Liquidator has been released from his duties as receiver of First Columbia’s estate do not render this appeal moot. The relief being requested, on appeal, and now granted, does not require that First Columbia become “undissolved” or that this particular liquidator, Robert A. Bourgeois, be in place as the liquidator. Further, the Liquidator incorrectly argues that this case is moot because any relief granted on' appeal would be impossible to implement. As is demonstrated by the body of this opinion, there are means by which the relief being requested can be granted. These avenues will be explored by the district court on remand. The Liquidator’s argument to the contrary is without merit.
The Liquidator next argues that this case is moot because a newly discovered asset in First Columbia’s estate may exist from which the Guaranty Associations’ claims could be reimbursed in full. According to the Liquidator, after appellate arguments before the three-judge panel which originally heard this case,, the Louisiana Office of Receiverships obtained information regarding a possible re *797 covery against an insurance company which had issued a reinsurance policy to First Columbia for the policy year 1987-1988, before First Columbia was placed in liquidation. This reinsurance recovery was not included as an asset in First Columbia’s liquidation estate because “persons supposedly knowledgeable in the field of reinsurance, retained on behalf of First Columbia ... and other liquidation estates, had certified that reinsurance receivables did not exist and were not among the assets of the liquidation estate of First Columbia .... ” The Liquidator argues that if recovery of this reinsurance receivable is accomplished, the issue of the interpretation of the interrelationship of La. R.S. 22:743 and 22:746 would be mooted because sufficient assets would be available to completely satisfy the claims of the Guaranty Associations.
hiThe possible existence of an asset which should have been included in First Columbia’s liquidation estate does not render this appeal moot. It has not been proved that the alleged claim under the reinsurance policy is valid, and even if the claim is valid, there is no guarantee that the claim would be paid, or that the Guaranty Associations would realize the benefits of any payment made under the policy. The district court is the proper forum where the validity of this alleged newly discovered asset should be developed.
The Liquidator’s motion to dismiss is denied.[6]
DECREE
For the foregoing reasons, the judgment of the trial court, dissolving First Columbia Life Insurance Company, is REVERSED insofar as the judgment approves the final dissolution plan. This matter is REMANDED to the trial court, which is directed to re-open the liquidation of First Columbia, and to appoint a liquidator, who shall be ordered to: (1) compile and distribute to the Guaranty Associations an accounting of any and all administrative expense disbursements previously made to any person or entity during the administration of this case within a reasonable time to be set by the trial court, and (2) investigate and pursue the existence of a possible reinsurance recovery to be included in the liquidation assets of First Columbia. Following these actions, the trial court is ordered to reconsider the propriety of the interim and proposed final payments within the Section 746 Class I claims in light of the views expressed in this opinion. Costs of this appeal in the amount of $462.10 are assessed to the appellee.
GUIDRY, J., concurs.

. Although the language of La. R.S. 22:734 and 22:737 infers that it is the duty of the Commissioner of Insurance to act as liquidator in domestic insurer insolvency proceedings, this statutory language does not mandate that he do so in all cases. Green v. Champion Insurance Company, 577 So.2d 249, 255 (La.App. 1st Cir.), writ denied, 580 So.2d 668 (La.1991).

. Louisiana Revised Statute 22:743 will be discussed later in the opinion.

. The judgment does not specifically state that the final dissolution plan was approved. However, such is inferred from the following language contained in the judgment: “Premises considered, the law and the facts being in favor thereof, all disputes with parties having claims against this estate being resolved and there being no opposition to the disbursement of the remaining funds in the order of priority set forth in the Reinsurance Agreement, ... it is hereby ... ORDERED, ADJUDGED AND DECREED that FIRST COLUMBIA LIFE INSURANCE COMPANY be dissolved!.]” To interpret the judgment otherwise would render the payments made under the final dissolution plan without binding, written, court-approved authority.

.The Guaranty Associations failed to set forth the issues on appeal in specifications or assignments of error as is required by Rule 1-3 of the Uniform Rules of the Courts of Appeal. However, this deficiency does not preclude this court from considering the issues raised by this appeal. Georgia Gulf Corporation v. Board of Ethics for Public Employees, 96-1907 (La.5/9/97), 694 So.2d 173, 176.

. As will be later discussed, we note that La. R.S. 22:743 does not specifically authorize the payment of administrative expenses on an "as-you-go" or interim basis.

. The Liquidator attached his own affidavit as support for allegations made in his motion to dismiss. Following this filing, the Guaranty Associations filed a motion to strike certain portions from the Liquidator's affidavit. We refer the motion to strike to the district court which, on remand, will be in a better position to assess the merits of the motion.