Dear Senator Heitmeier:
You have requested an opinion of the Attorney General regarding investments made by an insurance company (Insurco) in a Certified Louisiana capital company (CAPCO), and the impact that investment has on Insurco's state income tax liability. You specifically ask whether Insurco is entitled to a credit or offset against state income taxes, resulting from a credit against its premium tax liability because of its investment in a CAPCO.
As you are aware, R.S. 47:227 authorizes the offset of premium payments made by an insurance company against its state income taxes. It provides:
 § 227. Offset against tax
 Every insurance company shall be entitled to an offset against any tax incurred under this Chapter, in the amount of any taxes, based on premiums, paid by it during the preceding twelve months, by virtue of any law of this state.
R.S. 22:1068 further provides premium tax reductions for insurers investing in a CAPCO. Section 1068 (E)(1)(a) provides, in pertinent part, the following:
 Recognizing that it is also in the public interest to ensure sufficient availability of venture capital for purposes of technological development and job creation, the premium tax reduction for insurers investing in certified capital companies as defined in R.S. 51:1921 et seq shall be computed as one hundred ten percent of the amount of the investment at the time the investment is made.
As can be gleaned from the above, the CAPCO investment results in a credit against the premium tax due, as opposed to an actual payment of that premium tax. You offer the following two hypothetical scenarios to identify the issue to be resolved:
 Assume that the annual state income tax liability of Insurco is $100. Assume also that Insurco paid $50 in premium taxes for the same year. Under these facts, Insurco would owe gross state income taxes of $100 less the credit/offset for the $50 premium tax it paid (per R.S. 47:227). Thus, Insurco paid $50 in premium taxes and $50 in income taxes, for a total of $100.
 Again, assume that the annual state income tax liability of Insurco is $100, and its premium tax liability is $50. However, Insurco makes a qualified investment in a CAPCO. Pursuant to R.S. 22:1068(E), Insurco receives a $50 credit against its premium tax liability. As a result of this credit, Insurco makes no premium tax payment to the Department of Insurance. Since no premium was actually paid, one could argue that the offset against income taxes afforded under R.S. 47:227
does not apply. Thus, Insurco would be responsible for a gross income tax liability of $100 [i.e., the same dollar amount of liability incurred under Scenario (1), above].
The issue presented is whether Insurco can offset against its income tax liability, premium tax credits realized from CAPCO investments, in addition to premium tax payments. In answer to your question, we believe the following Louisiana Civil Code Articles to be relevant to the issue at hand:
 Art. 9. Clear and unambiguous law
 When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature.
 Art. 10. Language susceptible of different meanings
 When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law.
 Art. 13. Laws on the same subject matter
 Laws on the same subject matter must be interpreted in reference to each other.
R.S. 22:1068 and 51:1924, affording premium and income tax credits, were enacted in 1958 and 1983, respectively, and long after the 1934 enactment of R.S. 47:227. Obviously, the concepts of qualified investments in CAPCO's, and the premium and the income tax credit incentives afforded thereunder, were not available in 1934.
However, it is very clear that the Legislature deems these capital companies tax incentive programs to be in the public's best interest. R.S. 51:1921 and 22:1068(E)(1)(a) both recognize that the primary purpose for these programs is to "provide assistance in the formation and expansion of new businesses which create jobs in the state by providing for the availability of venture capital financing to entrepreneurs, managers, inventors, and other individuals for the development and operation of qualified Louisiana businesses".
Consequently, we do not believe that R.S. 47:227 should be viewed as operating in a vacuum, completely devoid of the laws affording CAPCO tax credits. It is axiomatic that, in construing statutes, all applicable laws on the same subject matter must be construed together in a manner which harmonizes and reconciles each with the other. In re First Columbia Life Ins. Co., 724 So.2d 790
(La.App. 1st Cir. 1998), writ not considered.
Equally sacrosanct is the legal principle that laws should be interpreted so as to give them the rational and beneficial meaning which the lawmakers obviously intended, rather than one that is completely contradictory of their paramount purposes. Broussardv. F. A. Richard and Associates, Inc., 732 So.2d 578 (La.App. 3rd Cir. 1999) writ denied.
We are of the opinion that an interpretation of R.S. 47:227 that limits income tax offsets or credits to premium taxes actually paid, thereby excluding premium tax credits resulting from qualified CAPCO investments, defeats the purposes and incentives for investments. Such a result would be clearly inconsistent with the legislative intent that such credits be acceptable as an incentive to provide assistance in the formation and expansion of new businesses.
We further believe that affording eligibility to premium tax credits under R.S. 47:227 is not only consistent with the objects and purposes of the CAPCO program, but also adheres to the mandate that laws on the same subject matter be interpreted in reference to each other.
We also direct your attention to Consolidated Edison Company ofNew York, Inc. v. U.S., 93-2 USTC ¶ 50, 644. In this case, reported in the United States Tax Code, the City of New York was faced with severe cash flow problems in the late 1970's. It requested Con Edison to prepay its property taxes, which Con Edison agreed to do, provided the city discounted the taxes it owed by an interest factor from the due date back to the payment date. The city agreed. Subsequently, for federal tax purposes, Con Edison deducted the amount of property taxes it paid, said amount including the amount actually paid plus the discountedamount. The Tax Court approved this method of payment stating:
 The city did not reduce Con Edison's underlining tax liability, but rather offered the discounts as consideration for the prepayment. The discounts were then effectively utilized to discharge Con Edison's full tax liability .The prepayments Con Edison made to the city were equal in value
to the face amount of Con Edison's property tax liabilities, even though the cash amount for the prepayments was less. . . .
As can be gleaned from the above, the discount was considered apayment of taxes. We find the discount in the Con Edison case to be analogous to the premium tax credit in the issue at hand. Thus, both constitute "payments" for income tax purposes.
Finally, we are cognizant of the doctrine of contemporaneous construction which provides that, when an ambiguity exists in the law, the interpretation given that law by those charged with its execution and/or implementation is entitled to great weight. Assuming arguendo, the statutes in question are ambiguous, we have been advised by representatives of the Department of Insurance and the Corporate Income Tax Division of the Louisiana Department of Revenue and Taxation, that they concur with the opinion expressed herein.
Accordingly, it is the opinion of this office that, under the scenarios presented hereinabove, Insurco would be entitled to an offset against its state income tax, as a result of any premium taxes paid and/or premium tax credits earned pursuant to qualified CAPCO investments, during the preceding twelve months.
Trusting this adequately responds to your inquiries, I am
Very truly yours,
 RICHARD P. IEYOUB Attorney General
 By: __________________________ ROBERT E. HARROUN, III Assistant Attorney General
RPI/REH,3/sfj